859 P.2d 191

**STATE of Arizona, Appellee,**

**v.**

**Eustacio PADILLA, Appellant.**

**Nos. 1 CA–CR 90–1276, 1 CA–CR 92–894–PR.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 26, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, Joel Ruechel, Deputy Navajo County Atty., Holbrook, for appellee.

M. Ruth O'Neill, Tucson, for appellant.

## OPINION

FIDEL, Judge.

We conclude in this decision that resentencing is required because defendant's lawyer had a conflict of interest that adversely affected his representation of defendant at the time of sentencing.

### I.

Appellant Eustacio M. Padilla (defendant) was indicted on three counts of sale and transfer of a narcotic drug, all class 2 felonies. The two counts charged in cause no. 89–CR–449 concerned the sale of cocaine and heroin to an informant on August 31, 1988; the one count charged in cause no. 89–CR–452 concerned the sale of heroin to the same informant on November 18, 1987. Defendant entered an *Alford* plea on all counts. The State agreed to dismiss allegations of *Hannah* priors [1] and allegations of violation of Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–3410 (1989), which carries a mandatory life sentence. The plea agreement stipulated that defendant would get concurrent sentences on the two-count charge and that defendant must serve a prison sentence without any early release credits or work furloughs. The trial judge accepted the agreement and sentenced defendant to an aggravated prison term of ten years on each count, with the sentence in cause no. 89–CR–452 to be served consecutively to concurrent sentences on the two counts in cause no. 89–CR–449.

Defendant filed a timely appeal on July 12, 1990, and a timely petition for post-conviction relief on October 2, 1990. This court stayed the appeal pending resolution of the petition for post-conviction relief and, on its own motion, consolidated the cases on December 8, 1992.

In his petition for post-conviction relief, defendant alleged ineffective assistance of counsel on the ground that his lawyer, Albert Freeman, had a conflict of interest. Freeman, without obtaining a waiver, represented defendant's wife, his brother, and his sister-in-law at a package rate on drug charges stemming from the same investigation and involving the same informant. Defendant argues that this conflict prevented Freeman from pursuing a better plea bargain by offering to have defendant testify against one or more of his relatives, and from seeking a more favorable sentence by arguing at sentencing that defendant had played a minor role in the family drug business, especially in relation to his brother. Defendant also argues that Freeman indirectly disparaged defendant at his wife's sentencing, which immediately preceded his own, adversely affecting the sentence in defendant's case.

1. *See State v. Hannah,* 126 Ariz. 578, 617 P.2d 530 (App.1980).

After conducting an evidentiary hearing, the trial judge denied the petition. The trial judge recognized that the "appearance of impropriety ... is great," but denied relief, emphasizing defendant's testimony at the hearing that he would have refused to accept any plea contingent on his testifying against a member of his family. The trial judge added:

> This court erred in not questioning the Defendant as to his awareness of possible conflicts or his willingness to waive any such conflicts, if they existed, but this error does not rise to the level of requiring the Court to grant a new trial.

■ Defendant did not initially file a motion for rehearing or petition for review. Instead, he sought to present the issue of conflict of interest in his brief on appeal. The State responded in its answering brief that this court had no jurisdiction to consider the issue because defendant had failed to preserve the allegations of his petition for post-conviction relief. The trial court, however, after denying that petition, had given defendant an extension to file a motion for rehearing and had imposed no deadline. Defendant ultimately filed such a motion on April 17, 1992, without objection by the State, and the trial judge denied this motion on April 21, 1992, without any reference to lack of timeliness. When defendant filed a petition for review with the trial court on May 21, 1992, the State filed a response on the merits and again made no objection on grounds of timeliness. Failure to file a timely motion for rehearing or petition for review is not jurisdictional. *State v. Pope*, 130 Ariz. 253, 635 P.2d 846 (1981). In light of the trial court's open extension of time for filing a motion for rehearing, and the State's failure to object to the timeliness of the motion or petition ultimately filed, we take jurisdiction of the petition for review as well as the appeal.

## II.

■ A defendant alleging ineffective assistance of counsel because of a conflict of interest must demonstrate 1) that an "actual conflict" existed and 2) that the conflict adversely affected the representation. *State v. Jenkins*, 148 Ariz. 463, 466, 715 P.2d 716, 719 (1986). "[A]dverse effect is a less burdensome requirement than prejudice." *Id.* at 467, 715 P.2d at 720. The former concerns lawyer performance, and the latter concerns outcome. If defendant demonstrates an "actual conflict" that reduced his attorney's effectiveness, prejudice is presumed. *Id.* at 466, 715 P.2d at 719 (citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)).

To examine the issue of conflict in this case, we begin with ER 1.7(b)

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

17A A.R.S. Sup.Ct.Rules, Rules of Professional Conduct, Rule 42, ER 1.7 ("ER 1.7").

■ The question arises whether defendant's lawyer represented "multiple clients in a single matter" within the meaning of the rule. The State argues that the relatives were not co-defendants; defendant was indicted separately for the sale of drugs on specific dates, and no other family member was charged in reference to those sales. That the family members were not technically co-defendants, however, is an empty formality in this case. Although separately indicted on separate transactions, the family members were indicted on successive cause numbers on similar charges, all involving narcotics sales to or through the same informant. Freeman charged a fee of $2500 per couple and conducted one investigation on behalf of all

defendants, interviewing each witness only once.

The probation officer who prepared this defendant's presentence report devoted a section to "Companion Action," outlined the charges and pleas of defendant's relatives, and described them as "companions in this action in the following cause numbers." At defendant's sentencing, the prosecutor referred to comments made at the sentencing of defendant's wife and described defendant's offense as a "family type enterprise." The prosecutor also distinguished the lighter sentences that a different judge had given defendant's brother and sister-in-law as mitigated by ill health and age. In short, the cases were treated at every level of proceeding as companion cases that concerned a family enterprise. We therefore attribute no significance to the fact that the cases were brought as separate indictments.

█ The next question is whether multiple representation made a practical difference in this case. The commentary to ER 1.7 states that a conflict arises when "a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." ER 1.7 cmt. Our case law states similarly that a defendant seeking to establish an "actual conflict"

> must demonstrate that *some plausible alternative defense strategy might have been pursued.* He need not show that the defense would necessarily have been successful if it had been used, but merely that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with the attorney's other loyalties or interests.

*State v. Martinez–Serna,* 166 Ariz. 423, 425, 803 P.2d 416, 418 (1990) (quoting *Jenkins,* 148 Ariz. at 466–67 n. 1, 715 P.2d at

719–20 n. 1 (citation omitted) (emphasis added)).

We may pass quickly over the assertion that the lawyer was inhibited from exploring whether defendant might receive a softer plea in exchange for providing evidence against a member of his family. The inhibition was real enough. However, there was no adverse effect in light of defendant's testimony at the post-conviction-relief hearing that he would never have entertained such a plea.

█ We come to a different conclusion, however, when we examine the lawyer's conduct at the sentencing hearings for defendant and his wife. First, though defendant would not have entertained a plea agreement that required him to testify against a family member, there is no indication in the record that a lawyer uninhibited by conflict might not have sought a lighter sentence for defendant by contrasting his level of participation in the family enterprise with that of his brother. Defendant was convicted of three counts of sale in two indictments. His brother was convicted of six counts of sale and one count of possession in five indictments. To point out defendant's lesser level of involvement at the time of sentencing was a "plausible alternative defense strategy" that his lawyer did not pursue. We cannot know whether such an argument would have succeeded. However, as we have indicated, in a conflict of interest case, the question is whether an alternative strategy would have been viable, not whether it would have been effective. *Martinez–Serna,* 166 Ariz. at 425, 803 P.2d at 418; *Jenkins,* 148 Ariz. at 466–67 n. 1, 715 P.2d at 719–20 n. 1.

Second, and more significantly, Freeman acted adversely to defendant when he indirectly shifted blame to defendant from his wife at her sentencing hearing immediately before defendant's own.[2] Seeking leniency

---

**2.** The State argued in its Response to the Supplemental Rule 32 Petition that the wife's sentencing followed, rather than preceded, defendant's sentencing. The record, however, shows that defendant's sentencing immediately followed his wife's before the same judge on the same day. At his own sentencing, the defendant and the prosecutor referred to events that occurred at the wife's sentencing, including the fact that the judge allowed defendant's wife seven days of freedom before reporting to prison.

for the wife, Freeman stated "I truly feel that she got caught up in this, rather than having it as her own individual enterprise." The unstated but effective implication was that defendant had led his wife astray.

Several courts have found under similar circumstances that "the attorney's active disservice to appellant's interests compels a finding of ineffectiveness." *Gravitt v. United States*, 523 F.2d 1211, 1217, 1219 (5th Cir.1975) (counsel remarked at joint sentencing that one client was "at the wrong place at the wrong time *with the wrong person,*" an obvious allusion to other client); *see also, e.g., Mone v. Robinson*, 430 F.Supp. 481, 485 (D.Conn.1977) (at joint sentencing of husband and wife, counsel portrayed wife as individual "misled grievously by her husband"); *cf. Dukes v. Warden*, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972) (refusing to permit defendant, after change of counsel, to withdraw guilty plea negotiated by first attorney, where first attorney argued at sentencing of other defendants two weeks before appellant's sentencing that appellant led the girls astray).[3]

We conclude that the attorney's implicit advocacy against his client at the time of sentencing of the wife amounts to ineffective assistance in this case. Even if a waiver could have redeemed the conflict, the evidence does not establish any waiver sufficient to meet the requirements of the rules. *See* ER 1.7. Freeman testified in post-conviction relief proceedings that he had suggested "the possibility of a con-

flict" to defendant at the start of the case and that defendant had responded that he had no conflict with his wife. Defendant, however, testified that he never waived any conflict, Freeman acknowledged he did not obtain a waiver in writing, and there is no indication that Freeman ever explained the implications and risks of common representation to defendant as ER 1.7(b) requires.[4]

We cannot know whether defendant would have received a lesser sentence if his lawyer had been conflict-free. However, as we have indicated, the adverse effect standard concerns lawyer performance, not outcome, and it was inherently damaging for the trial judge to hear the implication from defendant's own counsel that defendant had led his wife astray.

### III.

Defendant has shown that his lawyer's conflict of interest amounted to ineffective assistance of counsel at the sentencing stage of proceedings. As he has not shown that the conflict amounted to ineffective assistance at the stage of negotiating the plea, it suffices by way of remedy to remand for sentencing with the assistance of new counsel.

Defendant has raised other issues concerning his sentence, but our remand for resentencing makes it unnecessary for us to address them. We have reviewed the record for fundamental error and found none but those previously described. The conviction is affirmed, the sentence is va-

3. *See also United States ex rel. Taylor v. Rundle*, 305 F.Supp. 1036, 1039 (E.D.Pa.1969) (at joint sentencing, counsel elicited testimony from one client that he was more culpable than other client); *United States ex rel. Thompson v. Rundle*, 294 F.Supp. 933, 934 (E.D.Pa.1968) (at joint sentencing, counsel referred to one client as "not a confirmed criminal," but one who "got in the wrong company," an obvious reference to other client); *State v. Karston*, 247 Iowa 32, 72 N.W.2d 463, 467 (1955) (at joint sentencing, counsel recommended one of two brothers that he represented receive life imprisonment, and the other death); *People v. Sanders*, 54 Mich. App. 541, 221 N.W.2d 243, 245 (1974) (at joint sentencing, codefendants represented by same counsel argued that appellant was the leader and instigator of the crime); *Commonwealth v.*

*Bracey*, 224 Pa.Super. 294, 307 A.2d 320, 322 (1973) (at joint sentencing, counsel suggested that one client led astray another client with no criminal record or gang affiliation).

4. Our finding that there was no adequately specific waiver makes it unnecessary for us to decide whether even such a waiver could have redeemed the conflict in this case. A waiver, no matter how specific, is only proper in circumstances of multiple representation if, as a preliminary matter, the lawyer reasonably believes the representation of one client will not adversely affect the representation of the other. ER 1.7(a)(1) and (b)(1). We merely assume, without deciding, that the lawyer reasonably could have entertained such a belief under the circumstances of this case.

cated, and the matter is remanded for re-sentencing.

TOCI, P.J., and GARBARINO, J., concur.