622 P.2d 501

The STATE of Arizona, Appellee,

v.

Rupert Ray DIXON, Appellant.

Nos. 2 CA–CR 2006, 2 CA–CR 2016–2.

Court of Appeals of Arizona, Division 2.

Nov. 24, 1980.

Rehearing Denied Jan. 2, 1981.

Review Denied Jan. 20, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Richard S. Oseran, Pima County Public Defender by Barry J. Baker Sipe, Asst. Public Defender, Tucson, for appellant.

## OPINION

RICHMOND, Judge.

This is a consolidated appeal from two separate convictions, and the sentences imposed. In 2 CA–CR 2006 appellant challenges his conviction of unlawful sale of a narcotic drug with two prior felony convictions. He bases his appeal on four allegations of error: 1) the denial of a 12-person jury; 2) failure to preclude his impeachment by prior felony convictions; 3) enhanced sentencing based on insufficient proof of a prior felony conviction; 4) denial of his right to allocution prior to sentence pronouncement.

In 2 CA–CR 2016 appellant attacks his conviction of theft with one prior felony conviction. His appeal is based on six allegations of error: 1) failure to preclude his impeachment by prior felony convictions; 2) admission of testimony referring to "mug number" and "mug envelope"; 3) jury instruction on a permissive inference; 4) failure to submit separate theft verdicts to the jury; 5) denial of his right to allocution before sentence pronouncement; 6) denial of his motion to suppress evidence.

We affirm.

## RIGHT TO A 12–PERSON JURY

In 2 CA–CR 2006 appellant was charged with one count of unlawful sale of a narcotic drug, a non-dangerous felony with two prior non-dangerous felonies. For this charge he was subject to a possible maximum prison sentence of 28 years. A.R.S. §§ 13–604, 13–701. The court determined that appellant was not entitled to a 12-person jury and empaneled an eight-person jury. A.R.S. § 21–102, Arizona Constitution Art. 2, § 23.

Appellant contends the provision guaranteeing a 12-person jury when the possible sentence is 30 years or more must be interpreted in light of the criminal code existing when that provision was adopted by amendment in 1972. Under the old code a prisoner was eligible for parole after serving one-third of his sentence, or after 10 years of a 30-year sentence. From this he

argues the intent of Art. 2, § 23 is to provide a 12-person jury any time a person may suffer commitment without parole eligibility for 10 years or more. Under the present criminal code, effective October 1, 1978, parole eligibility for appellant's maximum 28-year sentence would be 18⅔ years. *See* A.R.S. § 13–604(D). Consequently, appellant maintains, he had a right to a 12-person jury. We do not agree.

The constitutional provision bases the right to a 12-person jury on the maximum sentence, not parole eligibility. The court acted correctly. *See State v. Smith*, 126 Ariz. 534, 617 P.2d 42 (1980).

Alternatively, appellant argues that the passage of the new criminal code, A.R.S. § 13–101 et seq., is void as unconstitutional and could not be used to determine his right to a 12-person jury. He bases the claim of unconstitutionality on two theories. The first is that one of the new code's purposes was to restrict the availability of a 12-person jury and did not include that purpose in its title as required by Arizona Constitution Art. 4, Pt. 2, § 13. The latter provision is intended to prevent surprise as to the subjects the act governs. *See State v. Sutton*, 27 Ariz.App. 134, 551 P.2d 583 (1976), aff'd in part, *rev'd* in part on other grounds, 115 Ariz. 417, 565 P.2d 1278 (1977). It is to be interpreted liberally to uphold the act's constitutionality on any legal basis. *State v. Sutton*, 115 Ariz. 417, 565 P.2d 1278 (1977). Sentencing is a matter reasonably expected to be dealt with in a criminal code and such purpose is described in A.R.S. § 13–101(6). That the right to a 12-person jury is indirectly affected by the sentencing changes does not render them void. *See State v. Harold*, 74 Ariz. 210, 246 P.2d 178 (1952).

Appellant's second theory is that the sentencing provisions are unconstitutional because they effectively amend Art. 2, § 23 without complying with Art. 21 governing constitutional amendments. This theory, however, is based on a false premise that the sentencing scheme somehow changes the right to a 12-person jury guaranteed by Art. 2, § 23. The constitutional provision is clearly addressed to the total possible authorized sentence in a criminal case. *See State v. Parker*, 22 Ariz.App. 111, 524 P.2d 506 (1974). That the new code reduced appellant's maximum possible sentence from life imprisonment to 28 years does not controvert or amend Art. 2, § 23.

## IMPEACHMENT BY PRIOR CONVICTIONS

In both cases the court denied appellant's motion to preclude his impeachment by prior convictions pursuant to A.R.S. 17A Rules of Evidence, rule 609(a). Appellant attacks the denials on two alternative theories. First, he claims that reversal is required because the court failed to make an on-the-record determination that the probative value of such evidence outweighs its prejudicial effect. *See State v. Cross*, 123 Ariz. 494, 600 P.2d 1126 (App.1979). Failure to make the finding on the record, however, does not mandate an automatic reversal. *State v. Ellerson*, 125 Ariz. 249, 609 P.2d 64 (1980). Although an on-the-record finding based on specific facts and circumstances is preferred, a record which shows that the court did weigh the probative value and the prejudicial effect in exercising its discretion will suffice.

In 2 CA–CR 2006, the motion to preclude was given a full hearing. That the court excluded the prior narcotics conviction while allowing the use of one prior burglary conviction and two prior grand theft convictions for impeachment indicates it weighed the probative value against the prejudicial effect.

In 2 CA–CR 2016, defense counsel submitted his motion to preclude on a memorandum, waiving his right to a hearing on the issue. The court denied the motion as to the narcotics conviction and granted it as to the burglary and grand theft convictions. Again, the exclusion of prior convictions for offenses similar to the matter on trial indicates the court meaningfully weighed the factors required by rule 609(a). Such a record will suffice despite the absence of a specific finding. *See State v. Ellerson*, supra.

■ Appellant's alternative theory is that the state failed to carry its burden of proof. *See State v. Becerill*, 124 Ariz. 535, 606 P.2d 25 (App.1979). In both cases the indictments identified the alleged prior convictions as Arizona felony offenses and included either a judgment order or minute entry to substantiate the convictions. These documents were sufficient to satisfy the first requirement of rule 609(a), that the offenses were felonies.

In 2 CA–CR 2006, the prosecutor effectively argued the probative value of the burglary and grand theft convictions. Such offenses have been recognized as having probative value. *See State v. Ellerson*, supra (burglary); *State v. Becerill*, supra (burglary, grand theft).

■ In 2 CA–CR 2016, although there was no hearing on the motion, the court exercised its discretion by excluding the burglary conviction. We find no abuse of that discretion in the determination that the state had discharged its burden as to the narcotics charge. *See State v. Dixon*, 126 Ariz. 613, 617 P.2d 779 (1980).

### PROOF OF PRIOR CONVICTION

After a guilty verdict in 2 CA–CR 2006, in a trial to the court appellant was found to have been previously convicted of two felonies, subjecting him to an enhanced sentence. A.R.S. § 13–604. He contends the state failed to carry its burden of proof with regard to the prior conviction for burglary and grand theft, Pima County No. A–21527. We do not agree.

■ The state produced a copy of a package record properly certified by the Department of Corrections as its master file on Rupert Ray Dixon which was admitted into evidence. The package included a judgment and commitment order for A–22629 and A–21527, a fingerprint record, and a photo. This record was properly admitted under 17A A.R.S. Rules of Evidence, Rule 803(8), as a public record. The Department of Corrections records are not within the exception of 803(8)(B) regarding the reports of police officers and other law enforcement personnel and *United States v. Oates*, 560 F.2d 45 (2d Cir. 1977), cited by appellant, is inapposite. The department is a custodial agency as distinguished from a law enforcement agency. This public record stands as prima facie evidence of the facts it contains. 17 A.R.S. Rules of Criminal Procedure, rule 19.3; 16 A.R.S. Rules of Civil Procedure, rule 44(a). *See State v. Peidra*, 120 Ariz. 53, 583 P.2d 1373 (App. 1978).

■ Appellant argues the records if admissible as a hearsay exception could still be challenged as to competency. *See State v. Cadena*, 9 Ariz.App. 369, 452 P.2d 534 (1969). The fingerprint card and photograph were not part of the judgment and commitment order, but all three were certified as part of the master file of the same person. The package photograph thus was prima facie evidence of the identity of the Rupert Ray Dixon convicted in A–21527. That the package included certain items related to a conviction other than A–21527 does not make it inadmissible and the other conviction was not considered in the trial before the court. The state presented the proof necessary to sustain a finding of a prior conviction. *See State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967).

### RIGHT TO ALLOCUTION

Under 17 A.R.S. Rules of Criminal Procedure, rule 26.10(b)(1), the court must give the defendant an opportunity to speak in his own behalf prior to sentencing. Appellant contends he was denied that opportunity in both cases and as a result must be resentenced. We do not agree.

Prior to pronouncing sentence in each case the court addressed defense counsel by name, asking if he had any legal cause to show why judgment and sentence should not be pronounced and if he had anything else to say. Defense counsel did present the court with mitigating circumstances and argued for imposition of the minimum sentence. The prosecutor was also given an opportunity to speak. At no time did the court similarly address appellant by name and ask if he had anything to say.

The Supreme Court of Arizona, however, has held that defense counsel represents and speaks for his client. *State v. Hopson*, 112 Ariz. 497, 543 P.2d 1126 (1975). When the court asked if there was any cause why judgment should not be entered and defense counsel responded, the court had effectively complied with the rule. *State v. Davis*, 112 Ariz. 140, 539 P.2d 897 (1975). *See also State v. Garrison*, 25 Ariz. App. 470, 544 P.2d 687 (1976).

## "MUG NUMBER" REFERENCES

In 2 CA–CR 2016 during the examination of a police identification technician the term "mug number" was used twice and "mug envelope" was mentioned once. These terms were used when the technician explained the general process used to identify a person by use of fingerprint analysis. Appellant claims that the technician's use of "mug" implied a prior criminal record. We do not agree.

Prosecution testimony about a defendant's "mug shot" can be reversible error. *State v. Jacobs*, 94 Ariz. 211, 382 P.2d 683 (1963); *State v. Cross*, 123 Ariz. 494, 600 P.2d 1126 (App.1979). Where not made in a context that would imply the defendant had a prior criminal record, the mention of "mug" does not constitute reversible error. *State v. Spain*, 27 Ariz.App. 752, 558 P.2d 947 (1976). The "mug number" and "mug envelope" references here were not made in such a context. The technician was explaining a process generally followed in fingerprint analysis without specific reference to appellant's identification. When he did explain how he identified appellant from fingerprints found at the crime scene, no "mug" terms were used. The impression created was that the comparison prints used were current and not on file from a prior crime. Consequently, there was no error.

## JURY INSTRUCTION

Appellant attacks as a comment on the evidence, denial of due process, or violation of his right against self-incrimination, the following jury instruction:

Proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property was aware of the risk that it had been stolen, or in some way participated in its theft. However, this circumstance alone is not enough to permit you to find the defendant guilty.

The instruction is taken from A.R.S. § 13–2305 and did not amount to a comment on the evidence. *Cf. State v. Childress*, 78 Ariz. 1, 274 P.2d 333 (1954) (statutory presumption from proof of alcoholic content of blood); *State v. Duran*, 118 Ariz. 239, 575 P.2d 1265 (App.1978) (statutory presumption that income tax return was signed by the person whose name is signed to it).

The instruction was not a denial of due process. Contrary to appellant's contention, the instruction does not violate the standard described in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The court may submit permissible inferences to the jury as long as the jury is informed that the inference is not conclusive. *State v. Van Winkle*, 126 Ariz. 476, 616 P.2d 936 (App.1980).

Nor did the instruction violate appellant's privilege against self-incrimination. *See Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Yee Hem v. United States*, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925). It does not amount to a comment on his failure to testify. *See United States v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). Finally, it could not amount to an impermissible comment on his post-arrest silence because he was not silent. *Cf. State v. Tuzon*, 118 Ariz. 205, 575 P.2d 1231 (1978) (failure to make exculpatory statements after arrest may be used for impeachment where defendant did not keep silent).

## FORM OF THEFT VERDICT

Appellant was charged by indictment in 2 CA–CR 2016 with second degree burglary and theft. He was acquitted of the burglary charge. The theft count charged:

On or about the 29th day of May, 1979, RUPERT RAY DIXON stole from or knowing or having reason to know it was stolen, controlled or came into control of property or services with a value of more than $100, as follows: One Curtis Mathis color television, One Panasonic Receiver, One Panasonic Turntable, Two Panasonic Speakers, belonging to LES ESSIF, and DEBORAH ALONGE, in violation of A.R.S. § 13–1802.

Pertinent portions of A.R.S. § 13–1802 are:

A. A person commits theft if, without lawful authority, such person knowingly:
1. Controls property of another with the intent to deprive him of such property; or

\* \* \* \* \* \*

5. Controls property of another knowing or having reason to know that the property was stolen.

The jury was instructed:

A person commits theft if, without lawful authority, such person knowingly controls property of another with intent to deprive him of such property; or, controls property of another, knowing or having reason to know that the property was stolen.

▮ Appellant's request that the theft count be submitted on two separate verdicts was denied. He contends the denial violated his right to a unanimous verdict under Art. 2, § 23 of the Arizona Constitution and deprived him of due process by eliminating a defense. We disagree.

His first argument is based on the statement in *State v. Counterman,* 8 Ariz.App. 526, 448 P.2d 96 (1969), that "a person has a constitutional right to be put on trial for a single offense, and ... has a right to a unanimous jury verdict with reference to the criminal act for which he was tried." *Id.* at 531,[1] 448 P.2d 96. The question is whether § 13–1802 describes a single offense of theft committable in more than one way or several separate and distinct

offenses, each constituting theft. *See State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (1976).

The Supreme Court of Washington in *Arndt* was faced with a similar question involving a grand larceny conviction for fraudulent receipt of public assistance. The jury was instructed that guilt could be based on a finding that the defendant either made a false statement, failed to reveal material facts, or failed to promptly notify the appropriate agency of a change in status. The court in approving the instruction recognized that there is a class of criminal statutes that defines a specific crime and provides ways in which the crime may be committed, and another class that may set forth several distinctive acts and make the commission of each a separate crime, all in one statute. Under the first class, it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime, regardless of unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged. We believe § 13–1802 falls in that class. Tests suggested by the Washington court are:

1. The title of the act.

2. Whether there is a readily perceivable connection between the various acts set forth.

3. Whether the acts are consistent with and not repugnant to each other.

4. Whether the acts may inhere in the same transaction.

Though the title of the act is of no help in determining legislative intent, we believe the heading on § 13–1802, "Theft, classification," correctly summarizes the content as dealing with a single offense. Insofar as paragraphs 1 and 5 of subsection A are involved, the statute has eliminated the distinction between grand theft and receiving stolen property as those crimes were defined prior to adoption of § 13–1802. *See* A.R.S. § 13–661 and § 13–621, repealed effective October 1, 1978.

---

1. *Counterman* involved an assault with a deadly weapon and the court held the stated rule did

not apply where a series of acts constitute but one and the same offense.

As for the other tests, the only "act" set forth in paragraphs 1 and 5 of subsection A is controlling the property of another. The varying states of mind set forth, in paragraph 1 the intent to deprive and in paragraph 5 knowing or having reason to know that the property was stolen, have a readily perceivable connection, are consistent with and not repugnant to each other, and clearly may inhere in the same transaction.

■ Appellant's argument that elimination of a defense deprived him of due process is based on *State v. Reynolds*, 11 Ariz. App. 532, 466 P.2d 405 (1970), decided under the previous criminal code in which theft and receiving stolen goods were separate and mutually exclusive offenses, and thus inapposite. Under the new code there is no repugnancy in controlling with the intent to deprive and controlling with knowledge or reason to know that property is stolen.

## MOTION TO SUPPRESS

In 2 CA–CR 2016 appellant moved to suppress items found in the trunk of his car as fruits of an unreasonable, warrantless search. The motion was denied.

On May 29, 1979, at approximately midnight, officer Leverenz was dispatched by radio to a possible burglary in progress at 1701 North Tyndall Avenue in Tucson. When he arrived a minute or two later he observed an automobile leaving the address at a normal speed and in a normal manner. No other vehicles were moving in the area. The officer followed the automobile for two blocks until it stopped at the Disabled American Veterans' Hall. Appellant left the automobile and walked toward the building. The officer stopped him and asked for some identification. Appellant claimed not to have any. When asked for the automobile registration, he denied having that either and said the automobile belonged to his brother, Rupert Dixon, who was inside the hall. Appellant identified himself as Larry Dixon. He was informed that the police were investigating a possible burglary at the apartment complex he had just left. Appellant said he had been visiting a woman who lived there and agreed to return to the scene to prove his story. Later, the burglary report was confirmed and appellant's story proved to be false. Appellant was arrested for giving false information to the police.

While sitting in a police car, appellant tried to hide some keys. The keys were retrieved by the police, who returned to appellant's automobile and discovered that the keys fit. At about 1:00 a.m. the police opened the trunk and found a guitar that had been taken from the Tyndall address.

■ Though appellant concedes the basis for an investigative stop, he argues that the police officers did not have probable cause when they searched his automobile. We disagree. When appellant was stopped, the officer lacked probable cause to search. Information obtained legally after a stop, however, can develop the necessary probable cause. *State ex rel. Hyder v. Superior Court*, 114 Ariz. 337, 560 P.2d 1244 (1977). After appellant was stopped, his explanation why he had been in the vicinity of the burglarized apartment proved to be false. Then he denied having been in the area, even though officer Leverenz had seen him there. Finally, appellant tried to hide the keys to his car by stuffing them between the back seat cushions of the police car. Under those circumstances the officers had probable cause to believe they would find seizable material in appellant's car. *See State v. Lawson*, 107 Ariz. 603, 491 P.2d 457 (1971).

■ Even if probable cause to search the car existed, appellant argues that no exigent circumstances justified a warrantless search. None were necessary. Automobiles, because of their mobility, may be searched without a warrant upon facts that would not justify a warrantless search of a residence. *State v. Walker*, 119 Ariz. 121, 579 P.2d 1091 (1978). Appellant's motion to suppress was properly denied.

Both judgments of conviction and sentences are affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.