IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

FEB 29 2008

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,      )
      )
          Appellee,   )   2 CA-CR 2007-0071
      )   DEPARTMENT B
    v.     )
      )   **O P I N I O N**
GLENN WENDELL BROWN,    )
      )
          Appellant.  )
      )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20061156

Honorable Edgar B. Acuña, Judge

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Laura P. Chiasson           Tucson
                               Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Rose Weston                                  Tucson
                               Attorneys for Appellant

V Á S Q U E Z, Judge.

**¶1** A jury found appellant Glenn Wendell Brown guilty of three counts each of sale of a narcotic drug and transfer of a narcotic drug, in violation of A.R.S. § 13-3408(A)(7). The charges arose from three separate sales of crack cocaine Brown made to undercover police officers in March 2006. The trial court sentenced Brown to concurrent, presumptive prison terms of five years for each of the six convictions. On appeal, Brown argues his convictions for both sale and transfer for each of the three drug transactions violated the prohibition against double jeopardy in the United States and Arizona Constitutions. For the reasons discussed below, we remand with instruction to the trial court to vacate one of Brown's two convictions for each of the three transactions.

### Facts and Procedural Background

**¶2** We view the evidence presented in the light most favorable to sustaining the convictions. *State v. Cropper*, 205 Ariz. 181, ¶ 2, 68 P.3d 407, 408, *supp. op.*, 206 Ariz. 153, 76 P.3d 424 (2003). On the evening of March 1, 2006, an undercover police officer assigned to an anti-narcotics unit and driving an unmarked car saw Brown standing on a street corner near a community college campus. He drove up to Brown, started a conversation, and told Brown he wanted to buy $40 of crack cocaine. Brown got into the officer's car and directed him to drive to a convenience store about two miles away where Brown made a telephone call to arrange for someone to deliver the drugs. After Brown and the officer waited in the car outside the convenience store for about half an hour, Brown said he recognized someone, walked out of sight of the car for a few minutes, and then returned.

2

He handed the officer some crack cocaine, and the officer paid Brown $40 and drove him back to the intersection where they had met.

¶3       Two days later, on March 3, the same officer was working undercover in the same neighborhood. Brown recognized the officer from their previous encounter, walked over to his car and got in. The officer said he wanted to buy another $40 amount of crack cocaine. Brown told the officer to drive around the block to a secluded parking lot. Once there, Brown gave the officer crack cocaine from a container he was wearing around his neck, in exchange for $40 cash. Brown then got out of the car and walked away.

¶4       On March 8, a second undercover officer who had been on surveillance duty during the first two transactions recognized Brown, who was riding a bicycle in the same area. The officer drove his truck up to Brown and asked him about another man whom the officer had known to be a cocaine dealer. Brown asked the officer what he was looking for. When the officer told him he was looking for crack cocaine, Brown put his bike in the back of the officer's truck and directed the officer to drive to an alley beside some nearby warehouses. The officer gave him $20 and Brown pulled out some small "crumbs" of crack cocaine from his pocket and gave them to the officer. The officer complained that the amount was less than $20 worth. Brown replied it was all he had at the time, but if the officer met him later he would give him some more. Around an hour later, the officer found him in the same area as before, and Brown gave him a small rock of crack cocaine.

¶5        Officers subsequently obtained a warrant for Brown's arrest, and a third officer arrested him a week later. Brown was charged with three counts of sale of a narcotic drug—one for each of the transactions on March 1, March 3, and March 8—and three counts of transfer of a narcotic drug—again, one count for each of those dates. A jury found him guilty on all six counts and further found the aggregate weight of the cocaine base exceeded the "threshold amount" of 750 milligrams or more for sentencing purposes.[1] The trial court sentenced Brown to presumptive, concurrent five-year prison terms for each of the six convictions. This appeal followed; we have jurisdiction under A.R.S. § 13-4033(A).

**Discussion**

¶6        Brown argues that his convictions on both sale and transfer charges for each of three transactions violate "his constitutional right to be free of double jeopardy." He contends there were only three drug transactions and under § 13-3408(A)(7), he "should have been charged with three separate offenses of 'sale,' 'transfer,' or 'sale or transfer' instead of being charged with three counts of Sale and three counts of Transfer." Thus, Brown argues that his charges for both the sale and transfer of narcotic drugs for each of the three transactions were multiplicitous.

---

[1]Section 13-3408(D), A.R.S., provides that if the aggregate amount of narcotic drugs involved equals or exceeds the statutory threshold amount, a person convicted under § 13-3408(A)(7) is not eligible for probation and must serve all of the prison sentence imposed by the court.

4

**¶7** "Multiplicity occurs when an indictment charges a single offense in multiple counts . . . [and] raises the potential for multiple punishments, which implicates double jeopardy." *State v. Powers*, 200 Ariz. 123, ¶ 5, 23 P.3d 668, 670 (App. 2001), *aff'd*, 200 Ariz. 363, 26 P.3d 1134 (2001). Whether charges are multiplicitous is an issue of statutory interpretation, which we review de novo. *Id.* ¶ 8. In interpreting statutes, we attempt to give effect to the legislature's intent. *State v. Fell*, 209 Ariz. 77, ¶ 33, 97 P.3d 902, 911 (App. 2004). As we noted in *State v. Dixon*, 127 Ariz. 554, 561, 622 P.2d 501, 508 (App. 1980), "there is a class of criminal statutes that defines a specific crime and provides ways in which the crime may be committed, and another class that may set forth several distinctive acts and make the commission of each a separate crime, all in one statute." The question here is whether the legislature intended a particular phrase in A.R.S. § 13-3408(A), "sell, transfer or offer to sell or transfer," to represent different ways to commit a single crime or rather to create separate offenses when a single transaction is involved.

**¶8** In *State v. Martin*, 105 Ariz. 265, 266, 463 P.2d 63, 64 (1970), our supreme court concluded that a similar phrase in a former drug statute, prohibiting the "furnishing" or "sale" of marijuana, merely stated "one crime, which may be committed in several different ways." And in *Dixon*, we reached a similar conclusion with regard to a theft statute, resolving the question of legislative intent by inquiring whether: 1) the acts at issue had a common object; 2) they were "consistent with and not repugnant to each other" (in other words, whether proof of one would disprove another), and; 3) they might "inhere in

5

the same transaction." 127 Ariz. at 561, 622 P.2d at 508; *see also State v. Arndt*, 553 P.2d 1328 (Wash. 1976). In addition, we interpreted the heading of the statute as an accurate summary of the offenses the legislature intended to create. *Dixon*, 127 Ariz. at 561, 622 P.2d at 508.

**¶9**　　　The heading of § 13-3408 reads as follows: "Possession, use, administration, acquisition, sale, manufacture or transportation of narcotic drugs." Subsection (A)(7) provides that "[a person shall not knowingly] . . . sell, transfer or offer to sell or transfer a narcotic drug." Assuming, as we did in *Dixon*, that the legislature intended to create no more offenses than those listed in the heading of the statute, the only offense applicable to this phrase is the "sale" of narcotic drugs. Nothing in the statute suggests the legislature intended to create multiple crimes from this phrase where a single act is involved.[2] Indeed, "had the legislature intended to create two separate offenses, it could have easily done so by enacting . . . separate subsections." *Manzanedo*, 210 Ariz. 292, ¶ 9, 110 P.3d at 1028. Furthermore, as Brown points out and the state concedes, our interpretation is consistent with the state's general practice under this statute of charging either sale or transfer, but not both, for a single transaction. *See, e.g., State v. Cota*, 191 Ariz. 380, ¶ 8, 956 P.2d 507, 509 (1998); *State v. Londo*, 215 Ariz. 72, ¶ 2, 158 P.3d 201, 202 (App. 2006); *State v. Padilla*, 176 Ariz. 81, 82, 859 P.2d 191, 192 (App. 1993).

---

[2]We do not suggest "sale" and "transfer" may not be charged as separate offenses when separate transactions are involved. We recognize that a transfer may occur without a sale.

**¶10**      Applying the *Dixon* test in the present case confirms this result.   The prohibited acts of sale and transfer have the common object of completing illegal drug transactions; proof of transfer will not disprove sale or vice versa; and, as the present case illustrates, it is possible for both sale and transfer to occur in a single transaction.  We thus conclude that the legislature intended the terms "sale" and "transfer" in § 13-3408(A)(7) to represent different ways of committing the same offense when a single transaction is involved.[3]

**¶11**      We believe the statute is clear and not susceptible to another interpretation.  But, even if the statute were ambiguous, we construe criminal statutes that are unclear or reasonably susceptible to different interpretations in favor of lenity.  *State v. Tarango*, 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996).  The rule of lenity "dictates that any doubt about statutory construction be resolved in favor of a defendant," *State v. Fell*, 203 Ariz. 186, ¶ 10, 52 P.3d 218, 221 (App. 2002), and thus "'against turning a single transaction into

---

[3]The state relies primarily on *State v. Braun*, 185 Ariz. 245, 914 P.2d 1337 (App. 1995), in arguing that we should construe "sale" and "transfer" as separate offenses. However, the double jeopardy claim in that case was based on a civil forfeiture, and "forfeiture is not a criminal punishment for double jeopardy purposes." *State ex rel. Goddard v. Gravano*, 210 Ariz. 101, ¶ 10, 108 P.3d 251, 254 (App. 2005). Even assuming, without deciding, that *Braun* stands for the general proposition that "sale" and "transportation" are separate offenses under A.R.S. § 13-3408, our conclusion in this case is not inconsistent:  under the *Dixon* analysis, "sale" and "transfer" clearly represent different ways of committing the same offense, while "sale" and "transportation" do not. 127 Ariz. at 561, 622 P.2d at 508.  And, contrary to the state's contention, interpreting those terms as different ways of committing the same offense renders them no more "superfluous and redundant" than interpreting them as separate offenses.

multiple offenses.'" *State v. Manzanedo*, 210 Ariz. 292, ¶ 10, 110 P.3d 1026, 1029 (App. 2005), *quoting Arndt*, 553 P.2d at 1334. We thus conclude that the charges against Brown for sale and transfer were multiplicitous.

**¶12** Having made this determination, we turn to the second part of Brown's argument, that his multiple convictions violated the Double Jeopardy Clause of the United States and Arizona Constitutions even though his additional concurrent sentences will not increase "the actual time [he] spends in prison." We review de novo whether double jeopardy applies. *Powers*, 200 Ariz. 123, ¶ 5, 23 P.3d at 670.

**¶13** "The Double Jeopardy Clause . . . bars multiple punishments for the same offense." *Id.* However, "[m]ultiplicitous *charges* do not subject a defendant to double punishment so long as multiple punishments are not imposed." *Merlina v. Jejna*, 208 Ariz. 1, ¶ 14, 90 P.3d 202, 205 (App. 2004) (emphasis added). But when a defendant is *convicted* more than once for the same offense, his double jeopardy rights are violated even when, as in the current case, he receives concurrent sentences:[4]

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart

---

[4]We note that A.R.S. § 13-116 does not apply in this case. That statute provides: "An act or omission which is made punishable in different ways *by different sections* of the laws may be punished under both, but in no event may sentences be other than concurrent." (Emphasis added.) *See also State v. Henley*, 141 Ariz. 465, 467-68, 687 P.2d 1220, 1222-23 (1984) (holding two offenses of assault occurred where one bullet injured two victims; thus consecutive sentences proper).

from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Ball v. United States*, 470 U.S. 856, 864-65 (1985) (citations omitted). Consistent with this reasoning, in *Powers*, we vacated one of two concurrent sentences the trial court had imposed for a defendant's convictions on multiplicitous charges. 200 Ariz. 123, ¶ 16, 23 P.3d at 672. Thus, we find that Brown's convictions for both sale and transfer based on the same conduct violated his double jeopardy rights despite the fact they did not result in a longer sentence of imprisonment.

¶14 The state argues alternatively that the third transfer conviction "was based on a transaction separate from that involved in the 'sale' of the narcotics" and should thus be upheld notwithstanding our conclusion that "transfer" and "sale" merely state different ways of committing the same offense. The state contends on appeal that Brown's interaction with the undercover officer on March 8 constituted two separate transactions, the first when the officer exchanged $20 for some "crumbs" of crack cocaine and the second when Brown gave him an additional "rock" about an hour later. However, both the indictment and the state's

9

presentation of the facts at trial establish that the jury found Brown guilty based on a total of three, not four, transactions, only one of which took place on March 8.[5]

**¶15**         We cannot affirm the third transfer conviction on the basis of an uncharged transaction. *See State v. Martin*, 139 Ariz. 466, 472, 679 P.2d 489, 495 (1984) (state cannot argue defendant guilty of uncharged transaction even if transaction associated with crime actually charged). And, even if we were to accept the state's argument on appeal that the third transaction was, in fact, two transactions, this would not salvage the multiplicitous charge; it would merely transform it into a duplicitous charge. *See State v. O'Brien*, 123 Ariz. 578, 582, 601 P.2d 341, 345 (App. 1979) ("Multiplicity is defined as charging a single offense in multiple counts, whereas duplicity is charging multiple offenses in a single count."). "Charging more than one act in a single count is forbidden because it does not provide 'adequate notice of the charge to be defended, . . . present[s] a hazard of a non-unanimous jury verdict, and . . . make[s] a precise pleading of prior jeopardy impossible in the event of a later prosecution.'" *State v. Davis*, 206 Ariz. 377, ¶ 54, 79 P.3d 64, 76 (2003), *quoting State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989); *see also State v. Ramsey*, 211 Ariz. 529, ¶ 6, 124 P.3d 756, 759 (App. 2005).

---

[5]Brown was charged with three counts each of sale and transfer, rather than the three counts of sale and four counts of transfer that would be consistent with the state's characterization of the charges on appeal. Further, in its opening statement at trial, the state referred to the entire March 8 transaction between Brown and the undercover officer as "the third undercover situation" and "the third transaction." And, in its closing argument, the state told the jury that "this case is about three sales and transfers of crack cocaine," referring to "three incidents."

**Disposition**

¶16    For the foregoing reasons, we conclude Brown's convictions for both sale and transfer of narcotics for each of three transactions violated his double jeopardy rights. We therefore remand with instructions for the trial court to exercise its discretion to vacate one of Brown's two convictions for each of the three transactions.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge