NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

ANTHONY DOSSEY,
*Appellant*.

No. 1 CA-CR 19-0140
FILED 2-27-2020

Appeal from the Superior Court in Maricopa County
No.  CR2017-148845-001
The Honorable George H. Foster, Jr., Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**J O H N S E N**, Judge:

¶1         Anthony Dossey appeals his convictions of two counts of aggravated assault and the resulting imposition of probation. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Dossey arrived at a car-restoration business and knocked at the front gate.[1] The victim, who worked there and had met Dossey before, let him in. Dossey soon began hurling insults at the victim, a transgender woman, who cursed back at Dossey. Dossey punched the victim, causing her to fall down. Dossey then bashed her head into the ground, choking her and causing her to pass out briefly.

¶3         Dossey next took the victim by the shoulders, smashed her head into the wall and threw her back to the ground, where he pinned her down with his knee in her back and restrained her hands with his own, rendering her unable to move. Dossey then bashed the victim's head into the ground and bent her finger back as if trying to break it.

¶4         The victim was unable to fight back during the entire 16-second altercation, which ended when the victim's friend chased Dossey away. The victim suffered scratched and bloody hands, arms, face and forehead, a red and swollen neck, and "brand marks" on her neck and shoulder.

¶5         A grand jury indicted Dossey on two counts of aggravated assault pursuant to Arizona Revised Statutes ("A.R.S.") sections 13-

---

[1]    We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Dossey. *State v. Gurrola*, 219 Ariz. 438, 439, ¶ 2, n.1 (App. 2008).

1203(A)(1) (2020) and -1204(A)(4) (2020).[2]  The superior court appointed counsel for Dossey, then denied Dossey's pretrial motion for new counsel. At trial, Dossey moved for acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that because the charges against him were multiplicitous, the State or the court should elect only one on which to proceed.  The court denied the motion.

**¶6**        The jury found Dossey guilty as charged and the court imposed two concurrent two-year terms of supervised probation, including 90 days in jail as a probation condition for Count 1.  Dossey timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2020), 13-4031 (2020) and -4033(A)(1) (2020).

## DISCUSSION

### A.    Multiplicity.

**¶7**        Dossey first argues the two aggravated-assault convictions resulted in double jeopardy because both arose under § 13-1204(A)(4), which he argues is an alternative-means statute, and his "manner of assaulting [the] victim involved only a single offense."

**¶8**        "Multiplicity occurs when an indictment charges a single offense in multiple counts and raises the potential for multiple punishments, which implicates double jeopardy." *State v. Brown*, 217 Ariz. 617, 620, ¶ 7 (App. 2008) (citation omitted).  "Whether charges are multiplicitous is an issue of statutory interpretation, which we review de novo." *Id.*

**¶9**        When a defendant is convicted of multiple charges based on "a single transaction" under a statute that defines "different ways of committing the same offense," the charges are multiplicitous and multiple convictions may not stand.  *Id.* at 620-21, ¶¶ 9-11 & n.2. Our inquiry is two-fold: We first determine whether the statute under which Dossey was convicted defines different ways to commit a single offense.  *See id.* at ¶¶ 9-10.  If that is so, we then decide whether Dossey's two convictions arose from a single transaction, or instead, from separate and distinct transactions constituting two offenses.  *See id.*  If the convictions are under a statute that defines different ways to commit a single offense and arose from a single

---

[2]        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

transaction, a double-jeopardy violation has occurred, and one of the two convictions must be vacated. *See id.* at 620-22, ¶¶ 7, 11, 16.

### 1. Alternative-means statute.

**¶10** One category of criminal statute "defines a specific crime and provides [different] ways in which the crime may be committed." *Id.* at 620, ¶ 7 (citation omitted). Another category of criminal statute "may set forth several distinctive acts and make the commission of each a separate crime, all in one statute." *Id.* (citation omitted). A statute in the first category is an "alternative-means statute." *State v. West*, 238 Ariz. 482, 489, ¶ 19 (App. 2015). In deciding whether a statute is an alternative-means statute, we consider "(1) the title of the statute, (2) whether there [is] a readily perceivable connection between the various acts listed in the statute, (3) whether those acts [are] consistent with and not repugnant to each other, and (4) whether those acts might inhere in the same transaction." *State v. Manzanedo*, 210 Ariz. 292, 294, ¶ 8 (App. 2005) (quotations omitted).

**¶11** Here, Dossey was charged with two offenses under the same subsection of § 13-1204, which states that a person commits aggravated assault if "the person commits the assault while the victim is bound or otherwise physically restrained *or* while the victim's capacity to resist is substantially impaired." A.R.S. § 13-1204(A)(4) (emphasis added); *see also* A.R.S. § 13-1203(A)(1) (defining "assault," as relevant here, as "[i]ntentionally, knowingly or recklessly causing any physical injury to another person").

**¶12** As Dossey contends, and the State concedes, § 13-1204(A)(4) is an alternative-means statute: (1) its title embraces a single subject – aggravated assault; (2) there is a strong connection between (A)(4)'s two prongs (physical restraint and impaired capacity to resist); (3) both prongs are consistent and not repugnant to one another because "proof of one will not disprove the other"; and (4) physically restraining a victim and substantially impairing that victim's capacity to resist certainly may inhere in the same transaction. *Manzanedo*, 210 Ariz. at 294, ¶¶ 8-9 (citation omitted); *see also* A.R.S. § 13-1204(A)(4). Therefore, (A)(4) defines a single offense and provides two alternative means by which to commit it.

### 2. Single versus multiple transactions.

**¶13** Though Dossey was convicted twice under the same alternative-means statute, if each charge arose from a separate transaction, no double-jeopardy violation occurred. *See Brown*, 217 Ariz. at 620-21, ¶¶ 9-11 & n.2.

**¶14** In *Brown*, the defendant was convicted on six charges: One count each of "sale" and "transfer" of a narcotic drug under the same alternative-means statute in connection with the same three separate events. *Id.* at 619, 621, ¶¶ 1, 10; *see* A.R.S. § 13-3408(A)(7) (2020). On each of the three occasions, the defendant accepted money from an undercover officer in return for narcotics. *Id.* at 619, ¶¶ 1-4. We held the three pairs of "convictions for both sale and transfer based on the same conduct violated [the defendant's] double jeopardy rights." *Id.* at 621-22, ¶ 13. The State argued that one of the transactions should be treated differently because on that occasion, the defendant first sold the officer a small amount of crack cocaine; after the officer complained it was too little, the defendant arranged to meet the officer an hour later to give him more. *Id.* at 619, 622, ¶¶ 4, 14. We rejected the State's argument that this amounted to two transactions (an initial "sale" and a subsequent "transfer") because "both the indictment and the state's presentation of the facts at trial establish that the jury found [the defendant] guilty based on a total of three, not four, transactions, only one of which took place on" the date in question, and because the State referred to the third dealing as a single "incident," "transaction" or "situation" during both opening and closing arguments. *Id.* at 622, ¶ 14 & n.5.

**¶15** Here, in contrast to *Brown*, although the entire altercation lasted only 16 seconds, based on the charges, the evidence regarding the attacks, and the State's delineation during closing arguments of how each charge corresponded to a discrete transaction, the jury found Dossey guilty based on two separate transactions and, accordingly, permissibly convicted him of two separate offenses.

**¶16** First, the indictment charged Dossey with Count 1: "intentionally, knowingly or recklessly [causing] physical injury to [the victim] while [her] *capacity to resist was substantially impaired* to wit: while *being choked*," and Count 2: "intentionally, knowingly or recklessly [causing] physical injury to [the victim] while [she] was *bound or otherwise physically restrained*, to wit: while [she] was *held on the ground*." (Emphasis added.) The indictment made clear that Count 1, charged under (A)(4)'s substantial-impairment prong, was based on Dossey injuring the victim while choking her, and Count 2, charged under (A)(4)'s physical-restraint prong, concerned a later, separate transaction: Dossey injuring the victim while pinning her down and restraining her.

**¶17** Second, the evidence presented at trial confirms that two separate transactions occurred. The victim testified Dossey first bashed her head into the ground and choked her, causing her to briefly pass out, which

corresponded to Count 1. She testified that, after Dossey picked her up and slammed her into the wall, he then threw her down, pinned her to the ground and restrained her hands, where he further bashed her head and bent her finger back; this second transaction corresponded to Count 2. Further, evidence of distinct injuries supported each transaction: For example, the jury reasonably could have found the victim's red and swollen neck supported Count 1 (Dossey choking her), and that her scratched, bloody hands supported Count 2 (Dossey restraining her hands while holding her on the ground).

¶18            Third, in its closing arguments, the State delineated Counts 1 and 2 by separately explaining the legal and factual bases underlying each, making clear to the jury which transactions supported each count. The verdict forms likewise distinguished between the two transactions for both counts.

¶19            In sum, because the State charged, presented evidence on, and argued two discrete transactions to the jury by showing Dossey physically injured the victim first while choking her and again while pinning her to the ground and restraining her hands, the jury convicted Dossey of two separate offenses under § 13-1204(A)(4). The charges therefore were not multiplicitous and no double-jeopardy violation occurred.

**B.      Motion for Change of Counsel.**

¶20            Dossey argues the superior court erred by denying his motion for new counsel without holding an evidentiary hearing. We review this decision for an abuse of discretion. *State v. Hidalgo*, 241 Ariz. 543, 557, ¶ 59 (2017).

¶21            The court was not required to hold an evidentiary hearing on the motion because Dossey failed to "allege specific facts suggesting an irreconcilable conflict or a complete breakdown in communication." *Id.* (citation omitted). In his motion, Dossey asserted his attorney's focus was "unsatisfactory," his attorney told him repeatedly that "he basically has no confidence in winning and his behavior shows to me that he isn't applying a decent effort unless I take the plea bargain or testify," and that the two of them could not "communicate in a way that create[d] any progress and [were] incompatible." These were not sufficiently specific factual allegations to warrant an inquiry. *Id.*; *see also id.* at ¶ 61 ("[G]eneralized complaints about differences in strategy do not necessitate a hearing." (quotation omitted)). Dossey's only specific factual allegation was that "[d]uring a consultation [Dossey's attorney] introduced his coworker for

some 'additional counsel,'" touting the coworker as "one of the most devious lawyers."  Even if this were true, this isolated comment about a third party does not suggest an irreconcilable conflict.  The superior court did not abuse its discretion by denying Dossey's motion for new counsel without a hearing.

**CONCLUSION**

¶22     For the foregoing reasons, we affirm Dossey's convictions and probation grants.



AMY M. WOOD • Clerk of the Court
FILED:  AA