NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MAKEBA S. MACK, *Appellant*.

No. 1 CA-CR 16-0803
FILED 8-22-2017

Appeal from the Superior Court in Yuma County
No.  S1400CR201600319
The Honorable Maria Elena Cruz, Judge

**APPEAL STAYED; JURISDICTION REVESTED; REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert C. Billar
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge James P. Beene and Chief Judge Samuel A. Thumma joined.

_____

**J O H N S E N**, Judge:

¶1        Makeba S. Mack appeals her two aggravated assault convictions, arguing the superior court erred by accepting her waiver of a trial by jury and that her convictions are multiplicitous. For the following reasons, we stay the appeal, revest jurisdiction in the superior court, and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mack's convictions arise from a single encounter with the victim, with whom she had been romantically involved. Mack dropped by the victim's house and saw another woman there. During the ensuing argument, Mack slashed the victim's face with a box cutter. She was charged with two counts of aggravated assault involving domestic violence.

¶3        Before trial, the State offered to dismiss one of the charges if Mack would plead guilty to the other and accept imposition of probation, including 120 days in jail. Separately, if Mack declined the plea offer, the State offered to withdraw its allegation of dangerousness if Mack would waive her right to a trial by jury. At a trial setting hearing three weeks before trial, Mack's counsel informed the superior court that Mack had "elected to proceed via bench trial." At a status conference one week before trial, the following exchange took place:

> Prosecutor: [O]ne of the agreements between the parties was that this matter would proceed [with a] bench trial in exchange for the State withdrawing the allegation of dangerous nature. The State did file the motion to withdraw that from the indictment.
>
> *        *        *
>
> Defense Attorney: I can advise the Court we have had a settlement conference in this case and I have spoken to Ms. Mack extensively about the options, the plea agreement, trial

2

to a jury, trial by bench. And so we have canvassed that terrain quite thoroughly.

The Court: Okay. Well, let's take it even further, because of the information regarding the withdrawal of the dangerous nature allegation.

\* \* \*

The Court: And what is the plea offer?

Prosecutor: The plea offer was to plead to aggravated assault, per domestic violence, a class three, with a stipulation of probation, 120 days in jail, but we were going to agree to work furlough.

The Court: All right. And has that offer changed any since the withdrawal of the dangerous nature allegation?

Prosecutor: No.

The Court: And, Ms. Mack, do you understand the plea offer—first of all, do you understand the charges against you?

The Defendant: Yes.

The Court: And do you understand the plea offer which has been extended to you?

The Defendant: Yes.

The Court: And is it your wish to reject that plea offer?

The Defendant: I'm not sure.

The Court: Okay. . . . And so essentially, you have two choices right now. There is an offer that is being made by the State in which you would agree to be put on probation, to do 120 days jail, and to have work furlough as part of that. So if you enter that agreement and the Court accepts it, that would be your sentence.

Now, you don't have to take that offer. You can go to trial. If you take the offer, you make an admission to having committed some offense that puts you in that sentencing

range, and you do have the opportunity at a mitigation hearing to express your position, to say what happened.

If you choose to go to trial, then there will be testimony presented by the State, officers, victim, everyone else, and then you have the opportunity, although you are not obligated to do that, but you can put on testimony and you can testify, as well, but then you no longer have the agreements as to sentencing. Then it is up to the Court. If you are found guilty, which may or may not happen, I don't know what the evidence is going to be until we hear it at trial, then the Court has the option of prison or putting you on probation. Do you understand that? So—yes?

The Defendant: Yes.

The Court: I see you nodding, but the court reporter has to take down your answer. So there is some exposure in terms of sentencing. Let me ask one more thing. Does the defendant have a prior criminal history?

Defense Attorney: None.

The Court: Okay. So now what I need to know from you, Ms. Mack, is definitively which of those options you want to take. I can't force you, nor will I try, but I need to know whether you want to reject the offer that the State is making and to go [to] trial or take that offer. You have to [choose] one of those two.

The Defendant: I don't know.

The Court: All right. The record will reflect the fact that the defendant is conferring with counsel.

The Defendant: I want to go to trial.

The Court: All right. We're back on the record. Ms. Mack?

The Defendant: I want to go to trial.

The Court: All right. That's fine. It is your right and we'll go to trial and the evidence will be presented. . . . So the bench trial is affirmed . . . .

4

¶4        Before opening statements at the bench trial a week later, the following exchange took place:

> The Court: The parties – or the State, rather, on August 31st, 2016, pursuant to an agreement reached between the parties, filed its motion to withdraw dangerous nature allegation and a statement that the parties wish to proceed per agreement with a bench trial rather than a jury trial.  Is that also the position of the defense?
>
> Defense Counsel: It is our position, Your Honor.
>
> The Court: And, Miss Mack, you understand that you do have the constitutional right to have this matter heard by a jury of your peers?
>
> The Defendant: Yes.
>
> The Court: And do you wish to proceed at this time without a jury and try this matter to the Court?
>
> The Defendant: Yes, ma'am.

¶5        After hearing the evidence, the superior court convicted Mack on both charges of aggravated assault pursuant to Arizona Revised Statutes ("A.R.S.") sections 13-1204(A)(1), (2) (2017) (respectively, causing "serious physical injury to another" and using "a deadly weapon or dangerous instrument").[1]  The judgment of conviction the court entered more than a month later contained a section titled "WAIVER OF TRIAL" that stated, "Pursuant to A.R.S. § 13-607, the court finds as follows: The defendant knowingly, intelligently, and voluntarily waived the right to a trial with a jury."  The court suspended sentencing on both convictions and ordered Mack to serve two concurrent terms of 60 months of supervised probation and 90 days in jail.

¶6        Mack timely appealed; we have jurisdiction pursuant to Article 6, § 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2017), 13-4031 (2017) and -4033(A)(1) (2017).

---

[1]        Absent material revision after the date of an alleged offense, we cite a statute's current version.

## DISCUSSION

### A.    Purported Multiplicitous Convictions.

¶7          Mack argues her two convictions are for a single act and violate the double jeopardy protections of the United States Constitution and Article 2, § 10 of the Arizona Constitution. Although she did not raise this issue in the superior court, a violation of double jeopardy constitutes fundamental error. *State v. Price*, 218 Ariz. 311, 313, ¶ 4 (App. 2008).

¶8          Mack contends her two convictions are multiplicitous. Multiplicity occurs when an indictment charges a single offense in multiple counts. *State v. O'Brien*, 123 Ariz. 578, 582 (App. 1979). Multiplicity can violate double jeopardy protections even when the court imposes concurrent sentences. *State v. Brown*, 217 Ariz. 617, 621, ¶ 13 (App. 2008). "The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." *Ball v. United States*, 470 U.S. 856, 865 (1985).

¶9          In relevant part, A.R.S. § 13-1204(A) provides:

A person commits aggravated assault if the person commits assault as prescribed by § 13-1203 under any of the following circumstances:

1.    If the person causes serious physical injury to another.

2.    If the person uses a deadly weapon or dangerous instrument.

¶10          When, as here, two charges allege violations of the same statute arising from a single act, the issue is whether the statute presents different ways to commit a single crime or instead creates separate offenses for a single transaction. *See Brown*, 217 Ariz. at 620, ¶ 7; *State v. Dixon*, 127 Ariz. 554, 561 (App. 1980) ("[T]here is a class of criminal statutes that defines a specific crime and provides ways in which the crime may be committed, and another class that may set forth several distinctive acts and make the commission of each a separate crime, all in one statute."). In conducting this analysis, we may consider (1) the title of the statute, (2) whether there was "a readily perceivable connection between the various acts" listed in the statute, (3) whether those acts were "consistent with and not repugnant to each other," and (4) whether those acts might "inhere in the same transaction." *Dixon*, 127 Ariz. at 561.

**¶11** Applying this analysis, we conclude that, as charged here, § 13-1204(A)(1) and (2) present different ways to commit a single crime. First, the title of the statute reflects a single harm - aggravated assault. Second, the acts listed in the two subparts are not repugnant to each other; proving one does not necessarily disprove the other. *See State v. Manzanedo*, 210 Ariz. 292, 294, ¶ 9 (App. 2005). To the contrary, acts described in the two subparts "are consistent with" each other "and clearly may inhere in the same transaction." *Dixon*, 127 Ariz. at 562. Accordingly, because Mack was convicted twice under a statute that presents different ways to commit a single crime, Mack's convictions were multiplicitous.

**¶12** The State concedes Mack's convictions are multiplicitous and agrees with her that the appropriate remedy is to vacate one of the convictions and one of the concurrent terms of probation. *See Rutledge v. United States*, 517 U.S. 292, 301-02 (1996) (for multiplicitous convictions "the only remedy . . . is . . . to vacate one of the underlying convictions as well as the . . . sentence based upon it" (quotation omitted)); *State v. Powers*, 200 Ariz. 123, 127, ¶ 16 (App. 2001).

**¶13** Mack asks us to vacate the conviction under § 13-1204(A)(2), assault with "a deadly weapon or dangerous instrument," because it carries "greater stigma in the eyes of law enforcement, would-be employers and the public at large." She argues "this would appear to be an appropriate case for an exercise of lenity." Mack, however, cites no authority for this argument in determining which of two multiplicitous convictions must be vacated. Under the circumstances here, that determination is for the superior court, not for this court.

**¶14** Accordingly, this court will stay this appeal for 60 days and revest jurisdiction in the superior court so that it may determine which of the two convictions it will vacate. At the same time, the court must vacate one of the two concurrent terms of probation.

## B. Waiver of Jury Trial.

**¶15** Mack also argues her rights under the Sixth Amendment and under Arizona Rule of Criminal Procedure 18.1 were violated when the superior court found she had waived her right to a jury trial. A defendant has a constitutional right to a jury trial. U.S. Const. amend. VI; Ariz. Const. art. 2, §§ 23, 24; *State v. Butrick*, 113 Ariz. 563, 565 (1976). In a criminal action, trial by jury may be waived by the consent of both parties expressed in open court and entered on its minutes. A.R.S. § 13-3983 (2017). A defendant's waiver of a jury, however, is valid only if it is knowing, voluntary and

intelligent. *State v. Innes*, 227 Ariz. 545, 546, ¶ 5 (App. 2011). On appeal after the superior court has found a defendant guilty following a waiver of a jury, it is the defendant's burden to show that "such waiver was not freely and intelligently made." *Adams v. United States*, 317 U.S. 269, 281 (1942).[2]

¶16 Rule 18.1(b) promotes the constitutional right to a jury trial. In relevant part, the rule provides:

> The defendant may waive the right to trial by jury with consent of the prosecution and the court. . . .
>
> (1) *Voluntariness.* Before accepting a waiver the court shall address the defendant personally, advise the defendant of the right to a jury trial and ascertain that the waiver is knowing, voluntary, and intelligent. . . .
>
> (2) *Form of Waiver.* A waiver of jury trial under this rule shall be made in writing or in open court on the record.

Ariz. R. Crim. P. 18.1(b)(1), (2). The failure to obtain a valid waiver of a defendant's right to a jury constitutes structural error. *State v. Becerra*, 231 Ariz. 200, 204, ¶ 12 (App. 2013).

¶17 Mack argues Rule 17.2, which sets out the requirements for a valid guilty plea, "should serve as a template for the warnings" a court must give when a defendant waives the right to trial by jury. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (guilty plea may be accepted only upon a finding that the defendant "intelligently and understandingly rejected" a trial). But our supreme court has declined to require a *Boykin* colloquy when a defendant agrees to waive the right to a jury. *State v. Conroy*, 168 Ariz. 373, 375 (1991). Instead, as *Conroy* noted, all the constitution requires in such a case is "that the defendant understand that the facts of the case will be determined by a judge and not a jury." *Id.* at 376. Albeit brief, the superior court's colloquy with Mack at the commencement of the trial

---

[2] Mack argues we should review *de novo* whether she knowingly, voluntarily and intelligently waived the right to a jury trial. Neither party cites authority establishing the proper standard of review. In addressing the standard of review applicable to a criminal defendant's waiver of the right to counsel, our supreme court has commented that "the applicable standard of review . . . has not yet been settled by this court." *State v. Djerf*, 191 Ariz. 583, 592, ¶ 25, n.2 (1998). Like the court in *Djerf*, we need not resolve the issue because our conclusion "would be the same under either a de novo or a deferential standard." *Id.*

satisfies this requirement and the requirement of Rule 18.1 that the court personally address the defendant about the matter.

**¶18** Mack also argues the superior court's written finding that her waiver was given "knowingly, intelligently, and voluntarily" fails to comply with Rule 18.1 because it was not made until weeks after trial. In support of this argument, Mack cites *State v. Baker*, 217 Ariz. 118, 119, ¶ 1 (App. 2007), in which we vacated the convictions of a defendant who had agreed to allow the court to determine the charges against him based on a stipulated record. In *Baker*, however, the superior court altogether failed to personally address the defendant and there was no evidence of a written waiver. *Id.* at 120, ¶ 11. Under those circumstances, we concluded the superior court's statements in minute entries that the defendant "waives [t]rial by jury" and had "knowingly, intelligently and voluntarily waived his right to a trial by jury" were insufficient to establish a valid waiver. *Id.* at 121, ¶¶ 13-15 (alteration in original). Here, by contrast, the record plainly discloses that the superior court personally engaged with Mack at the outset of the trial about whether she waived her right to a jury. *See* ¶ 4 *supra*.

**¶19** Rule 18.1(b) requires the superior court to ascertain that a defendant's jury waiver is knowing, voluntary and intelligent, and allows the court to make that finding either in open court on the record or in writing. Ariz. R. Crim. P. 18.1(b)(1), (2). In *Butrick*, the Arizona Supreme Court let stand a finding of waiver made on the record only after the evidence had been received, just before closing arguments. 113 Ariz. at 566-67 ("We find that upon the unique circumstances of this case, the waiver of the right to a trial by jury was knowing, voluntary and intelligent and although the trial judge fulfilled his obligation under rule 18.1(B)(1) somewhat belatedly, he did fulfill it."). We likewise conclude here that although the superior court made the finding only after the trial had concluded, given that the court had personally engaged with Mack at the outset of the trial, the delay in making the required finding did not render Mack's jury waiver invalid under Rule 18.1.

**¶20** Nevertheless, although supporting the conclusion that Mack's waiver was knowing and intelligent, the record provides uncertain support for the court's finding that her waiver was voluntary. *See State v. Vassar*, 111 Ariz. 487, 489 (1975).[3] Given that we are staying this appeal and revesting jurisdiction in the superior court so that it may address the multiplicitous convictions, during that time, we also will allow the parties and the superior court an opportunity to revisit the voluntariness issue. Accordingly, on remand, within 20 days of the issuance of this memorandum decision, Mack may choose to ask the superior court to hold a hearing to determine whether her waiver of her right to a jury trial was voluntary. If Mack requests such a hearing and the court determines that Mack's waiver was voluntary, that will resolve the issue unless Mack presses the issue upon expiration of the stay. If Mack requests a hearing and the court determines that her waiver was not voluntary, however, it would appear that the result would be that Mack would be subject to a retrial, and the State would be entitled to reinstate the dangerousness allegation, a result that could have significant consequences for sentencing if Mack were to be convicted and the dangerousness allegation proved.

## CONCLUSION

For the foregoing reasons, we stay this appeal for 60 days and revest jurisdiction in the superior court so that it may determine which of the two multiplicitous convictions to dismiss, to vacate one of the two concurrent terms of probation, and to enter an amended judgment. In addition, within

---

[3] On appeal, Mack does not argue she did not understand she was giving up her right to a jury trial. In her reply brief, she argues for the first time that her rejection of the State's plea offer was not made knowingly because at the time of trial, she thought she faced the possibility of two convictions. She contends that because she and the State both mistakenly assumed she could be convicted on both charges, "a good part of the State's consideration for the plea agreement was illusory." The issue on appeal, however, is whether Mack's jury waiver was effective, and she does not assert she would not have waived a jury if she had known she faced the possibility of just one conviction, not two.

10

20 days of the issuance of this memorandum decision, Mack may ask the superior court to conduct a hearing to determine whether her waiver of her right to jury trial was voluntary. Within five days of the superior court's entry of an amended judgment on remand, the State shall file the judgment with this court.

