IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JARED NEIL KELLY, *Appellant.*

No. 1 CA-CR 22-0487
FILED 02-22-2024

Appeal from the Superior Court in Yavapai County
No. V1300CR201980701
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Amy Pignatella Cain
*Counsel for Appellee*

The Zickerman Law Office PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

**OPINION**

Judge Anni Hill Foster delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

¶1        Defendant Jared Kelly appeals his convictions and sentences for three counts of aggravated assault, arguing that they are multiplicitous and violate double jeopardy. He also alleges he is entitled to a new trial because the court erred in admitting expert testimony from a peace officer. Because Kelly's convictions are not multiplicitous and the admission of the officer's testimony was not error, his convictions and sentences are affirmed.

### FACTUAL AND PROCEDURAL HISTORY

¶2        One day in January 2019, while driving in Cottonwood, Kelly hit L.Y.'s Jeep from behind, with enough force to send both vehicles careening up steep embankments on opposite sides of the roadway. Kelly's Dodge came to rest on the east embankment about 430 feet from the point of impact. L.Y.'s Jeep came to rest on the west embankment about 400 feet from the point of impact. The Jeep's back bumper and front end were damaged, and the driver's side of the vehicle was crumpled. The Dodge had substantial front-end damage and was leaking fluid. While L.Y. called 911, Kelly fled the scene on foot.

¶3        L.Y. was taken to a hospital where medical personnel found an open fracture of her ankle bone as well as other fractures and lacerations in her lower leg. L.Y. also had broken ribs and a broken sternum. Although her bones healed, the accident impaired her ability to walk long distances. Police located Kelly the next day. Kelly said he "couldn't remember" who caused the collision and that after it occurred, he checked on L.Y. and told her he "had a couple of beers and didn't want to get a DUI."

¶4        As relevant here, the State charged Kelly with three counts of aggravated assault under A.R.S. § 13-1204: (1) causing a serious physical injury, (2) using a deadly weapon or dangerous instrument, and (3) causing

a fracture. The police officer who investigated the collision testified at trial that he determined Kelly rear-ended L.Y. while driving about 80 miles per hour in a 45 mile-per-hour zone. A jury convicted Kelly of the three counts of aggravated assault. The trial court sentenced him to concurrent, greater-than-presumptive prison terms for the three convictions, the longest being nine years.

¶5        Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A) provide jurisdiction for Kelly's appeal.

**DISCUSSION**

### I.        The convictions are not multiplicitous.

¶6        Kelly contends that the aggravated assault convictions and sentences are multiplicitous and violate his constitutional right to be free from double jeopardy. *See* U.S. Const. amend. V; Ariz. Const. art. 2, § 10.[1] "Multiplicity occurs when an indictment charges a single offense in multiple counts," violating the Double Jeopardy Clause of both the U.S. and Arizona Constitutions. *State v. Brown*, 217 Ariz. 617, 620, ¶ 7 (App. 2008) (quoting *State v. Powers*, 200 Ariz. 123, 125, ¶ 5 (App. 2001)). Multiplicitous charges are not unlawful in themselves, *Merlina v. Jejna*, 208 Ariz. 1, 4, ¶ 13 (App. 2004), but only become so if a defendant receives multiple sentences for the same crime, *id.* at ¶ 14 & n.4. The Double Jeopardy Clauses protect against "multiple punishments for the same offense." *Carter*, 249 Ariz. at 315, ¶ 7 (quoting *State v. Jurden*, 239 Ariz. 526, 529, ¶ 10 (2016)).

¶7        "The protection against double jeopardy may be triggered in two contexts" — one, "if the same conduct is held to constitute a violation of two different criminal statutes" and two, "if multiple violations of the same statute are based on the same conduct" entailing "a single offense." *Jurden*, 239 Ariz. at 529, ¶¶ 10-11. The method used to analyze a double jeopardy claim depends on which circumstance is present. *Id.*

---

[1]        The double jeopardy provision of the Arizona Constitution is "virtually identical" to its federal counterpart, and the analysis under each is the same. *State v. Carter*, 249 Ariz. 312, 314, ¶ 1 n.2 (2020). Moreover, given the sentences here were concurrent, there is no "double punishment" issue under A.R.S. § 13-116 ("An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.").

### A. Kelly's sentences for multiple counts of aggravated assault based on one incident do not violate double jeopardy.

**¶8**   Kelly's main argument is that under *State v. Powers*, 200 Ariz. 123 (App.), *aff'd*, 200 Ariz. 363 (2001), he can only be convicted of one aggravated assault because the collision constituted a single criminal act that harmed just one person. Kelly's reliance on *Powers* is unpersuasive. That decision addressed the crime of leaving the scene of an accident under A.R.S. § 28-661. The defendant in *Powers* could be convicted of a single crime, even though he caused an accident involving two victims, only because the unit of prosecution for leaving the scene of an accident is determined by each "accident scene," not the number of victims involved in any accident. *Id.* at 126–27, ¶¶ 9–16. Kelly's sentences for separate aggravated assault offenses do not pose a unit of prosecution issue.

### B. Subsections (A)(1), (A)(2), and (A)(3) of A.R.S. § 13-1204 describe separate offenses, not alternative means.

**¶9**   Kelly was convicted and sentenced for violating three subsections of the aggravated assault statute—A.R.S. § 13-1204(A)(1), (2), and (3).[2] A double jeopardy violation constitutes fundamental error, *Jurden*, 239 Ariz. at 528, ¶ 7, even if a defendant receives concurrent sentences, *Carter*, 249 Ariz. at 314, ¶ 1 n.1. When resolving a double jeopardy claim based on multiplicity, this Court must first determine whether the statutes in question reflect separate offenses or alternative means of committing a single offense. The issue presents a question of statutory interpretation, which is considered *de novo*. *State v. Luviano*, 255 Ariz. 225, 227, ¶ 7 (2023); *see also State v. Burns*, 237 Ariz. 1, 22, ¶ 83 (2015) (*de novo* review of multiplicity claims); *Carter*, 249 Ariz. at 315, ¶ 7 (*de novo* review of double jeopardy claims).

**¶10**   "In Arizona, criminal statutes can contain multiple descriptions of proscribed conduct." *Luviano*, 255 Ariz. at 228, ¶ 9. An "alternative means" statute describes a "single unified offense" that can be committed in alternative ways. *Id.* Another form of criminal statute enumerates "several distinctive acts," each describing "a separate crime." *Id.* (citations omitted).

**¶11**   A.R.S. § 13-1204(A)(1)–(3) provides as follows:

---

[2]  We cite the current version of statutes because revisions enacted after Kelly committed the offenses in 2019 are not material to this decision.

> A. A person commits aggravated assault if the person commits assault as prescribed by section 13-1203 *under any of the following circumstances*:
>
>> 1. If the person causes serious physical injury to another.
>>
>> 2. If the person uses a deadly weapon or dangerous instrument.
>>
>> 3. If the person commits the assault by any means of force that causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part.

(Emphasis added).

¶12 To determine whether subsections (A)(1), (A)(2), and (A)(3) describe separate aggravated assault offenses or a single unified offense, this Court's analysis begins with the statutory language. *Luviano*, 255 Ariz. at 228, ¶ 10. Words are given their ordinary meaning unless it is evident that a different meaning is intended, in which case the statutory provisions are interpreted "in view of the entire text." *Id.* (quoting *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019)). If the statutory language reveals a "clear and unambiguous" meaning, our analysis ends there. *State v. Burbey*, 243 Ariz. 145, 147, ¶ 7 (2017). But if the language is reasonably susceptible to different meanings, "secondary interpretation methods, including consideration of the statute's 'subject matter, its historical background, its effect and consequences, and its spirit and purpose'" are employed. *Id.* (citations omitted).

¶13 Here, § 13-1204(A)(1)–(3) is not ambiguous. Section 13-1204(A) does not establish elements of a crime beyond simple assault without reference to the subsections of the statute. The subsections, in turn, describe distinct acts that each establish the crime of aggravated assault. *See Luviano*, 255 Ariz. at 229, ¶ 11 (reasoning that descriptions of "different acts" set forth in different subsections could "be reasonably read to make each subsection a separate offense").

¶14 But even if the statute was deemed ambiguous, this interpretation is supported by § 13-1204's structure, context, and purpose. The circumstances in (A)(1), (A)(2), and (A)(3) address distinct conduct and

are set forth in separate subsections. No syntactical components or language connect them. These characteristics also support that each subsection creates a new offense and that they should be read independently from one another. *See State v. Freeney*, 223 Ariz. 110, 113, ¶ 16 (2009) ("When the elements of one offense materially differ from those of another—even if the two are defined in subsections of the same statute—they are distinct and separate crimes."); *cf. Luviano*, 255 Ariz. at 229, ¶ 13 (reasoning that language joining different subsections of a statute "indicates an intent to provide alternative descriptions for the same material facts").

**¶15**    Penalty distinctions among the subsections also support an interpretation of separate offenses. Committing aggravated assault under subsection (A)(1) or (A)(2) is a class three felony, whereas committing aggravated assault under subsection (A)(3) is a class four felony. A.R.S. § 13-1204(E). These differences point to separate offenses rather than alternative means. *Cf. Luviano*, 255 Ariz. at 230, ¶ 18 (reasoning that subsections of a statute that provide "similar statutory punishments indicate alternate ways of committing a single crime"); *see also Mathis v. United States*, 579 U.S. 500, 505, 518 (2016) (observing that if a statute includes "alternatives carry[ing] different punishments," those alternatives describe "elements" that point to different crimes).

**¶16**    Conversely, this Court has previously stated that multiple aggravated assault charges stemming from only one act are multiplicitous. *See State v. Carrillo*, 1 CA-CR 19-0492, 2020 WL 4007047, at *12, ¶¶ 13-14 (Ariz. App. July 16, 2020) (mem. decision) (finding that two charges of aggravated assault resulting from a single gunshot wound to a single victim were multiplicitous); *see also State v. Pena*, 209 Ariz. 503, 506, ¶ 12 (App. 2005) (concluding that aggravated assault could be committed either by causing serious physical injury or using a deadly weapon without any analysis of multiplicity); *State v. Steel*, 1 CA-CR 16-0545, 2018 WL 3358998, at *2, ¶¶ 12-13 (Ariz. App. July 10, 2018) (mem. decision) (concluding that aggravated assault is a single offense that can be committed in multiple ways without a supporting analysis). But the conclusions in those cases were not based on a multiplicity analysis, instead relying on concessions from the State or providing insufficient support for its conclusions. They are not persuasive.

**¶17**    The aims of the aggravated assault statute also bolster this conclusion. *See State v. Korzep*, 165 Ariz. 490, 493 (1990) (considering "the policy behind the statute and the evil it was designed to remedy" as evidence of legislative intent); A.R.S. § 13-104 (requiring criminal statutes to "be construed according to the fair meaning of their terms to promote

justice and effect the objects of the law"). What makes an assault "aggravated" does not turn on a singular type of circumstance. *See State v. Paredes-Solano*, 223 Ariz. 284, 288, ¶ 10 (App. 2009) (reasoning those statutory subsections that "address [ ] two separate harms" convey "a legislative intention to create two separate offenses"); *cf. Luviano*, 255 Ariz. at 229, ¶ 14 (reasoning those statutory subsections that "address the same primary harm" support a finding of alternative means). Subsections (A)(1) and (A)(3) of § 13-1204 define an aggravated assault based on the extent of physical harm caused. Subsection (A)(2), on the other hand, provides for aggravation based on the instrumentality used—whether or not any physical harm resulted. These different aims point to separate offenses.

¶18     Other provisions of § 13-1204 offer contextual support for this Court's conclusion. Eleven subsections comprise § 13-1204(A). They describe felonies variously penalized under classes two, three, four, five, and six. *See* § 13-1204(E). And they reflect a range of different purposes for aggravating an assault. Some subsections focus on the nature of the instrumentality or method used to carry out the assault. *See* A.R.S. § 13-1204(A)(2), (4)–(5), (9), (11). Others focus on the status of the victim or the defendant. *See* A.R.S. § 13-1204(A)(6), (8)–(10). And as noted above, subsections (A)(1) and (A)(3) focus on the extent of physical injury. Taken together, the considerable number and variety of purposes and penalties contained within the enumerated "circumstances" of § 13-1204(A) confirm an intent to describe separate offenses. Kelly's convictions under § 13-1204(A)(1), (A)(2), and (A)(3) are not multiplicitous.

### C. Subsection (A)(3) of § 13-1204 is not a lesser-included offense of subsection (A)(1).

¶19     Despite concluding that subsections (A)(1), (A)(2), and (A)(3) of § 13-1204 are separate offenses and not facially multiplicitous, the analysis of Kelly's double jeopardy claim cannot stop there. Though the subsections are separate offenses, this Court still has a duty to determine whether he was sentenced for different offenses based on the same conduct. *See Jurden*, 239 Ariz. at 529, ¶ 10.

¶20     *Blockburger v. United States*, 284 U.S. 299 (1932), established the "same elements test" to determine whether distinct offenses charged under different statutory provisions constitute the same offense, thereby violating double jeopardy. *Carter*, 249 Ariz. at 315, ¶ 9. The same elements test asks, "whether each provision requires proof of a fact which the other does not." *Id.* (quoting *Blockburger*, 284 U.S. at 304). Conviction of both a greater and its lesser-included offense constitutes double jeopardy under the

*Blockburger* test. *Brown v. Ohio*, 432 U.S. 161, 167–68 (1977); *see also Lemke v. Rayes*, 213 Ariz. 232, 239, ¶ 18 (App. 2006). "An offense is 'lesser-included' when the 'greater offense cannot be committed without necessarily committing the lesser offense.'" *Carter*, 249 Ariz. at 316, ¶ 10 (quoting *State v. Wall*, 212 Ariz. 1, 3, ¶ 14 (2006)) (internal quotation marks omitted). "In determining whether offenses are the 'same' for purposes of double jeopardy analysis, we look to the elements of the offenses and not to the particular facts that will be used to prove them." *State v. Ortega*, 220 Ariz. 320, 324, ¶ 9 (App. 2008). Because section 13-1204(A)(2), aggravated assault using a deadly weapon or dangerous instrument, contains very different elements than § 13-1204(A)(1) and (A)(3), which concern physical injury, this Court need only analyze whether any overlap exists between subsections (A)(1) and (A)(3).

**¶21**          Subsection (A)(1) of § 13-1204 refers to an aggravated assault "caus[ing] serious physical injury to another." "'Serious physical injury' includes physical injury that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39). Subsection (A)(3) of § 13-1204 refers to an aggravated assault "caus[ing] temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part." The difference between these two provisions is that (A)(3) contemplates "temporary" harms or impairments while (A)(1) addresses "permanent" or "protracted" harms or impairments. *See State v. George*, 206 Ariz. 436, 441, ¶¶ 8-9 (App. 2003) (comparing § 13-1204(A)(1) and (A)(3) and concluding "that the legislature intended 'serious physical injury' [under subsection (A)(1)] to refer to an injury more serious than those injuries [under subsection (A)(3)] justifying a mere nondangerous, class four felony classification").

**¶22**          Comparing the elements of subsections (A)(1) and (A)(3), "neither contain identical elements nor involve identical proof." *Merlina*, 208 Ariz. at 5, ¶ 17. For this reason, (A)(1) and (A)(3) do not violate *Blockburger*. Though it would be a rare circumstance in which a person caused a permanent or protracted impairment under (A)(1) without causing the less serious temporary but substantial impairment described in (A)(3), it is conceivable that that a victim could sustain both types of injuries because of a single incident. Here, L.Y. sustained multiple injuries, some more temporary such as lacerations and broken bones but others more protracted such as an impaired ability to walk even after the healing of the fractured bones. Sections 13-1204(A)(1) and (A)(3) address multiple harms rather than a single harm. This plain language supports the conclusion that

the legislature intended to criminalize circumstances that result in a particular harm, rather than a simple act alone. *See State v. Delgado*, 232 Ariz. 182, ¶ 24 (App. 2013). Here, the harm inflicted by Kelly on L.Y. resulted in both temporary and protracted injuries. Kelly's sentences reflect those separate harms and do not violate double jeopardy.

## II. The expert testimony was properly admitted.

**¶23** The trial court denied Kelly's pretrial motion to preclude the investigating officer from offering his expert opinion on the cause of the collision and Kelly's speed. On appeal, Kelly reasserts his claim that the officer's opinion did not satisfy the requirements of Arizona Rule of Evidence ("Rule") 702 or A.R.S. § 12-2203 because it was not "based on sufficient facts or data" and "reliable principles and methods" and because the officer did not "reliably appl[y] the principles and methods to the facts of the case." Ariz. R. Evid. 702(b)–(d); A.R.S. § 12-2203(A)(3)–(5). We review the trial court's decision to admit expert testimony for an abuse of discretion. *Bliss v. Treece*, 134 Ariz. 516, 518 (1983). Though the trial court correctly determined that Kelly's motion was untimely, this Court addresses the merits.

**¶24** A party seeking to offer expert testimony "must prove, by a preponderance of the evidence, that the testimony is both relevant and reliable." *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 298, ¶ 19 (App. 2014). The trial court acts as a "gatekeeper" to such testimony by "mak[ing] a preliminary assessment as to whether the proposed expert testimony is relevant and reliable." *Id.* The court's role is not intended to "supplant or replace the adversary system." *Id.* at ¶ 20. "Rather, '[c]ross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *State v. Bernstein*, 237 Ariz. 226, 229, ¶ 11 (2015) (quoting 2012 comment to Rule 702). Rule 702's "overall purpose . . . is simply to ensure that a factfinder is presented with reliable and relevant evidence, not flawless evidence." *Id.* at ¶ 14 (citation and internal quotation marks omitted).

**¶25** The officer who investigated the collision testified at a pretrial evidentiary hearing about his analysis and conclusions. The officer had spent most of his 23 years on the force handling traffic-related issues, and he was trained in accident investigation and reconstruction, as well as how to estimate speed. The officer had participated in "thousands" of traffic investigations, "[a]t least 100" of which were collisions of similar seriousness to the collision involving Kelly and L.Y. Only in fatal or

potentially fatal accidents did the officer take part in "full accident reconstructions"—which entailed taking detailed measurements and inputting them into a mapping program. For nonfatal accidents, as in this case, the officer would draw conclusions about speed and causation by considering factors including vehicle damage, distances, debris, and tire marks.

¶26 Turning to his investigation of the collision here, the officer testified at the hearing that Kelly rear-ended L.Y. while driving 80 miles per hour. His conclusion was based on his training and experience, after determining the point of impact and considering the distance the vehicles traveled, the damage incurred by each vehicle, and L.Y.'s statement that she had slowed down to 45 miles per hour not long before she was hit. The officer offered similar testimony at trial, although he provided greater detail on how the specific evidence at the collision scene, combined with his training and experience, led to his conclusions. The officer acknowledged at trial that his determination of Kelly's speed was an "estimate" or "rough determination" and that Kelly could have hit L.Y.'s vehicle "a couple inches off" of center.

¶27 Kelly has shown no abuse of discretion in the admission of the officer's testimony. The record supports a finding that the officer's opinion was based on "sufficient facts or data." Ariz. R. Evid. 702(b); A.R.S. § 12-2203(A)(3); *see also Miller*, 234 Ariz. at 298, ¶ 22 ("The assessment of the sufficiency of the facts and data is a quantitative, not qualitative analysis.").

¶28 Nor does Kelly show that the officer used unreliable methods to reach his conclusions. *See* Ariz. R. Evid. 702(c)-(d); A.R.S. § 12-2203(A)(4)-(5). The trial court's evaluation of reliability is intended to be "flexible," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), and the court has "considerable leeway," based on the "particular facts and circumstances of the particular case," to assess reliability, *id.* at 152, 158.[3] In doing so, the court need not consider any specific factor or set of factors. *See id.* at 141–42; *Miller*, 234 Ariz. at 299, ¶¶ 24–25; *see also* A.R.S. § 12-2203(B) (enumerating factors to be considered "if applicable").

¶29 The basis of the officer's opinion here "was neither rocket science nor complex statistical modeling." *United States v. Lopez-Martinez*, 543 F.3d 509, 515 (9th Cir. 2008). Given the facts of the case, the officer's

---

[3] "Because Rule 702 mirrors its federal counterpart, we may look to the federal rule and its interpretation for guidance." *Bernstein*, 237 Ariz. at 228, ¶ 9.

"explanation of his methods and experience was sufficient for the trial judge to be confident" in the reliability of his opinion. *Id.*; *see also Roundy v. Stewart*, 140 Ariz. 201, 205 (App. 1984) (holding that expert testimony on how an accident occurred was supported by a sufficient foundation when it was based on witness statements, the condition of the roadway, and physical evidence). The record also supports a finding that the officer "reliably applied" the methods he described to the facts of the case. Ariz. R. Evid. 702(d). The officer explained in detail how he came to his conclusions, and he addressed "alternative explanations." *Miller*, 234 Ariz. at 299, ¶ 27.

**¶30**        Ultimately, any flaws in the officer's opinion went to issues of weight and credibility for the jury to assess, not admissibility. *See Bernstein*, 237 Ariz. at 230, ¶18 (holding that whether errors "render evidence unreliable" is a question for a jury to "assess the weight and credibility of the evidence"); *cf. id.* at 229–30, ¶¶ 15, 18 (observing that errors in applying a generally reliable method do not require excluding expert testimony unless the errors "are so serious as to render the results themselves unreliable" and recommending that the trial court err on the side of admission "[i]n close cases"). Kelly had the opportunity to highlight such deficiencies through cross-examination and defense expert testimony. The court did not err by admitting the expert's testimony.

## CONCLUSION

**¶31**        For these reasons, Kelly's convictions and sentences are affirmed.

