NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEROME LEE HALL, JR., *Appellant.*

No. 1 CA-CR 23-0381
FILED 07-02-2024

Appeal from the Superior Court in Yuma County
No. S1400CR202100295
The Honorable Darci D. Weede, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

**P A T O N**, Judge:

¶1          Jerome Hall, Jr. appeals his convictions and sentences for second-degree murder and two counts of aggravated assault. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Because Hall challenges the sufficiency of evidence to support the second-degree murder conviction, we recite the facts in the light most favorable to sustaining that conviction. *See State v. Guerra*, 161 Ariz. 289, 293 (1989). Jack[1] and Hall were at the same bar one evening, and engaged in a "rap battle" in the bar's parking lot. Other bar patrons came outside or watched from the back door of the bar. Jack and Hall's rapping escalated into insults and argument, and turned physical when Jack attempted to hit Hall. After Jack removed his shirt and advanced toward Hall, Hall pulled out a gun and fired several shots in Jack's direction. Bullets from Hall's gun struck Jack in the face and torso, and also hit Cindy, a bystander. Hall fled the scene.

¶3          Someone attempted to resuscitate Jack. A police officer arrived within a few minutes and saw that Jack was not breathing; the officer's resuscitation efforts failed. Cindy's gunshot injuries included a through-and-through bullet wound that "shattered some bones in her forearm" and a wound to her abdomen, where the bullet entered and became lodged in her lower back. Five bullet casings were found at the scene. Hall surrendered to police about 20 hours after the shooting. The State charged him with first-degree murder for Jack's death and two counts of aggravated assault (causing serious physical injury and using a deadly weapon) for Cindy's injuries. Jurors could not agree on the first-degree murder charge but found Hall guilty of the lesser-included offense of second-degree murder and of both aggravated assault counts. The superior court sentenced him to consecutive terms of 16 years' imprisonment for the murder and 7.5 years' imprisonment for each of the aggravated assaults. The court ordered the aggravated assault convictions to run concurrently to each other, but consecutively to the second-degree murder conviction.

¶4          Hall timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

---

[1] We use pseudonyms to protect the victims' identities.

**DISCUSSION**

**¶5**        Hall contends that reversible error permeated his convictions and sentences for the murder of Jack and the aggravated assaults of Cindy. We address each of his four claims in turn.

## I.        Substantial evidence supports Hall's second-degree murder conviction.

**¶6**        After the State rested its case, Hall moved for a judgment of acquittal on the murder charge under Arizona Rule of Criminal Procedure 20(a)(1). The superior court denied the motion. Hall now argues the court should have granted the motion because the State did not prove beyond a reasonable doubt that he killed Jack. Hall submitted to the superior court, and reasserts now, that the State presented no medical testimony attributing Jack's death to gunshot wounds or otherwise ruling out the possibility that Jack died from a superseding condition.

**¶7**        The superior court must enter a judgment of acquittal "[a]fter the close of evidence on either side . . . if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt. The question is whether, on the evidence presented, rational factfinders could find guilt beyond a reasonable doubt." *State v. Fulminante*, 193 Ariz. 485, 493, ¶ 24 (1999) (citations and internal quotation marks omitted). We review the denial of a motion for judgment of acquittal de novo, considering the evidence in the "light most favorable to sustaining the verdict." *State v. Allen*, 253 Ariz. 306, 335, ¶ 69 (2022) (citation and internal quotation marks omitted). "The substantial evidence required to support a conviction may be direct or circumstantial." *State v. Teagle*, 217 Ariz. 17, 27, ¶ 40 (App. 2007).

**¶8**        The trial evidence showed that Jack fell right after Hall shot him in the face and torso, and immediate attempts to resuscitate Jack were unsuccessful; he died soon after. This evidence enabled jurors to infer, beyond a reasonable doubt, that Hall killed Jack. *See State v. Blevins*, 128 Ariz. 64, 67 (App. 1981) (observing that the probative value of circumstantial evidence is "essentially similar" to that of direct evidence and the prosecution is not required "to negate every conceivable hypothesis of innocence" in a case based on circumstantial evidence). Hall fails to show that the superior court's denial of his motion for judgment of acquittal was erroneous.

**II.      The superior court did not err in denying Hall's motion to strike previously admitted autopsy photographs.**

**¶9**          A forensic technician who observed and photographed Jack's autopsy testified for the State at trial.  The superior court admitted autopsy photographs taken by the technician during the technician's testimony. When the State moved to admit the photographs into evidence, Hall's counsel responded he had no objection to their admission, and they were published to the jury.

**¶10**          Two days later, Hall moved to strike the photographs, arguing they lacked relevance because there was no testimony from the medical examiner explaining the significance of the photographs to Jack's cause of death after the State rested its case.  The court treated Hall's motion as an untimely objection to the photographs' admission and denied it, determining that the untimeliness of his objection eliminated any obligation to weigh the photographs' probative value against their tendency to inflame jurors or otherwise cause unfair prejudice.

**¶11**          Hall now argues that the autopsy photographs lack relevance and the superior court erred by not striking them from the record.  He further argues that even if the photographs were marginally relevant, the court must have considered the risk of unfair prejudice against such relevance.  *See* Ariz. R. Evid. 403.  We review the superior court's evidentiary ruling for an abuse of discretion but consider its interpretation of the Arizona Rules of Evidence de novo.  *State v. Johnson*, 247 Ariz. 166, 199–200, ¶ 127 (2019).  We will affirm the court's ruling "if the result was legally correct for any reason."  *State v. Perez*, 141 Ariz. 459, 464 (1984).

**¶12**          Hall fails to establish error.  Even assuming the superior court should have considered the relevance and prejudicial effect of the photographs, we find no fault with its ruling.  "Photographs of a victim's body are always relevant because the fact and cause of death are always relevant in a murder prosecution."  *State v. Morris*, 215 Ariz. 324, 339, ¶ 70 (2007) (citations and internal quotation marks omitted).  "This is so even [if the defendant does] not dispute how [the victim] was injured or his cause of death."  *State v. Rushing*, 243 Ariz. 212, 219, ¶ 27 (2017).  Here, the autopsy photographs were relevant "to corroborate the state's theory of how . . . the homicide was committed," *State v. Sanders*, 245 Ariz. 113, 127, ¶ 53 (2018) (citations and internal quotation marks omitted), and to prove that Hall caused Jack's death.

**¶13**		Nor was the probative value of the photographs "substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403. "Unfair prejudice means an undue tendency to suggest decision on an improper basis . . . such as emotion, sympathy or horror." *State v. Riley*, 248 Ariz. 154, 177, ¶ 70 (2020) (citations and internal quotation marks omitted). Jack's autopsy photographs were not "admitted for the sole purpose of inflaming the jury," *Morris*, 215 Ariz. at 339, ¶ 70 (citation and internal quotation marks omitted), nor did they otherwise influence jurors to convict Hall for improper reasons. Hall did not dispute that he caused the injuries seen in the photographs, which included substantial damage to Jack's face caused by a gunshot fired at close range. "There is nothing sanitary about murder," and the autopsy photographs were "fair representations of what happened" to Jack. *State v. Rienhardt*, 190 Ariz. 579, 584 (1997). As such, the photographs were "[a]dverse, yes; unfairly prejudicial, no." *State v. Schurz*, 176 Ariz. 46, 52 (1993).

**¶14**		The superior court also acted within its discretion when it treated Hall's motion to strike as an untimely objection to the photographs' admission. As previously mentioned, Hall did not object to the photographs' admission during the forensic technician's testimony, and the photographs were not conditionally admitted subject to a medical expert's testimony. Further, the State informed Hall before trial that the medical examiner would only testify if needed for rebuttal. Thus, Hall had no reasonable basis to assume the photographs would be addressed again after the forensic technician's testimony. By failing to timely object to the photographs' admission or to request an assessment of prejudice at that time, Hall effectively waived application of Rule 403. *See State v. Montano*, 204 Ariz. 413, 425, ¶ 58 (2003) (failure to timely object under Rule 403 waives a later challenge on that basis).

### III.	Hall's convictions of aggravated assault are not multiplicitous and do not place him in double jeopardy.

**¶15**		Hall was convicted of committing two counts of aggravated assault against Cindy under Section 13-1204(A)(1), causing serious physical injury, and under (A)(2), "us[ing] a deadly weapon or dangerous instrument." He contends the convictions are multiplicitous and constitute double jeopardy because they are based on a single act. We review his claims de novo. *State v. Burns*, 237 Ariz. 1, 22, ¶ 83 (2015) (multiplicity); *State v. Carter*, 249 Ariz. 312, 315, ¶ 7 (2020) (double jeopardy).

**¶16**		"Charges are multiplicitous if they charge a single offense in multiple counts." *Merlina v. Jejna*, 208 Ariz. 1, 4, ¶ 12 (App. 2004). Although

multiplicitous charges are not inherently unlawful, they can become so if a defendant receives multiple sentences for the same crime. *Id.* at ¶¶ 12, 14. This is because the double jeopardy clauses of our federal and state constitutions "'protect[ ] against multiple punishments for the same offense.'" *Carter*, 249 Ariz. at 315, ¶ 7 (quoting *State v. Jurden*, 239 Ariz. 526, 529, ¶ 10 (2016)); *see also* U.S. Const. amend. V; Ariz. Const. art. 2, § 10. A double jeopardy violation constitutes fundamental error, *Jurden*, 239 Ariz. at 528, ¶ 7, even if the defendant receives concurrent sentences, *Carter*, 249 Ariz. at 314, ¶ 1 n.1.

¶17 Assuming that Hall injured Cindy by a single act, the resolution of his claim depends on whether Section 13-1204 subsections (A)(1) and (A)(2) describe alternative means of committing a single aggravated assault offense or separate aggravated assault offenses. *See State v. Luviano*, 255 Ariz. 225, 228, ¶ 9 (2023); *State v. Brown*, 217 Ariz. 617, 620, ¶ 7 (App. 2008). In other words, the question is whether subsections (A)(1) and (A)(2) describe different ways to commit the same offense. *See State v. West*, 238 Ariz. 482, 489, ¶ 19 (App. 2015). Sentencing a defendant "more than once for the same offense" violates the defendant's right to be free from double jeopardy. *Brown*, 217 Ariz. at 621, ¶ 13.

¶18 Our recent decision in *State v. Kelly*, ___ Ariz. ___, 545 P.3d 478 (App. 2024), settles the question. Similar to Hall's case, the defendant in *Kelly* argued that his convictions of aggravated assault under Section 13-1204 subsections (A)(1), (A)(2), and (A)(3) were multiplicitous and placed him in double jeopardy because they arose from a single act. *Id.* at 481–82, ¶¶ 6, 9. We disagreed and determined that subsections (A)(1), (A)(2), and (A)(3) of the aggravated assault statute describe separate offenses, not alternative means. *Id.* at 482–84, ¶¶ 9–18. Thus, a defendant may receive a separate sentence for violating each subsection. *Id.* at 485, ¶ 22. Hall has not persuaded us to depart from *Kelly* and, therefore, his multiplicity and double jeopardy claims fail.

### IV. The superior court did not err in sentencing Hall to consecutive terms for his murder and assault convictions.

¶19 The superior court sentenced Hall to concurrent prison terms for the aggravated assaults but ordered that they be served consecutive to his sentence for second-degree murder. Hall argued at sentencing, and argues now, that the court should have run all three sentences concurrently because the offenses arose from just one act, which he describes as a "series of shots" that he intended only to hit Jack.

¶20      Section 13-116 provides that "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." Thus, "[t]he statute bars consecutive sentences when the defendant's conduct is a 'single act.'" *State v. Hampton*, 213 Ariz. 167, 182, ¶ 64 (2006) (quoting *State v. Gordon*, 161 Ariz. 308, 315 (1989)). Our federal and state constitutions forbid courts from imposing multiple punishments, concurrently or consecutively, for the "same offense." *Carter*, 249 Ariz. at 314–15, ¶¶ 1 n.1, 7; U.S. Const. amend. V; Ariz. Const. art. 2, § 10. We review de novo whether Hall's sentences violate Section 13-116 or implicate double jeopardy. *State v. Dunbar*, 249 Ariz. 37, 53, ¶ 48 (App. 2020) (§ 13-116); *Carter*, 249 Ariz. at 315, ¶ 7 (double jeopardy).

¶21      The superior court permissibly imposed consecutive sentences for Hall's "distinct and separate crimes." *See State v. Girdler*, 138 Ariz. 482, 489 (1983). Hall fails to establish that he committed a "single act" for purposes of Section 13-116 or the "same offense" for purposes of double jeopardy when he fired multiple shots that killed Jack and injured Cindy. *Cf. State v. Miranda*, 198 Ariz. 426, 429–30, ¶¶ 16–17 (App. 2000) (each of three shots fired—one into the ground and two toward two victims— "constituted a separate act" by the defendant); *State v. Singleton*, 66 Ariz. 49, 57 (1947) ("[A]lthough several shots be fired in such quick succession that they constitute, in effect, but one act, still, the result may involve more than one offense" for purposes of double jeopardy); *State v. Carlson*, 237 Ariz. 381, 400–01, ¶¶ 79–84 (2015) (consecutive sentences for kidnapping and felony murder of the same victim did not violate Section 13-116 or constitute double jeopardy). In any event, harming different victims—even if accomplished by a single act—constitutes different offenses that permit consecutive sentences. *See State v. Gunter*, 132 Ariz. 64, 68–70 (App. 1982); *Hampton*, 213 Ariz. at 182, ¶ 65; *State v. Henley*, 141 Ariz. 465, 467 (1984).

## CONCLUSION

¶22      We affirm Hall's convictions and sentences.

